GLADNEY, Judge.
Plaintiff has appealed from a judgment rejecting his demands for workmen’s compensation. For a cause of action he alleges that while attempting to turn on an electrical switch to heat up the boilers at the place of business for his employer, Bird & Son, Inc., there was an electrical flash from the switch, which caused him severe shock and burns, after which he was hospitalized and treated. He alleges that as residuals to the electrical shock he suffers some severe adrenal damage resulting in a syndrome of weakness, asthenia, .hypertension and elec *262 trolyte imbalance, lower body temperature and easy susceptibility to disease and injury. In an excellently written opinion by the trial judge the evidence presented upon the trial of the case has been carefully analyzed and fully and accurately discussed. As pointed out in this opinion, the decision of the case turns upon whether, vel non, it has been proved by a preponderance of the evidence the plaintiff did in fact receive an electrical shock. The opinion reads:
“This is a suit by plaintiff against Bird & Son, Inc. and its workmen’s compensation insurance carrier, Employers Mutual Liability Insurance Company of Wisconsin, to recover workmen’s compensation at the maximum statutory rate for total and permanent disability, plus medical expense in the amount of $2,500, less that already paid, as well as statutory penalties and attorney’s fees.
“Plaintiff alleges that he was employed by the defendant, Bird & Son as slate man; that on or about August 3, 1960, at about 4:30 a. m., while attempting to turn on the electrical switch to heat up the boilers, which was in the course and scope of his employment, there was an electrical flash from the switch, causing severe shock and burns to his ears, inside of his mouth, back, and shoulders, left arm, neck, and right wrist, as well as his eyes; that he lost consciousness, and was taken to the P & S Hospital in Shreveport, Louisiana, and there treated by the company doctor, Dr. Jack E. Birdwell; that he was discharged from the hospital on or about August 5, without dressing of his burns; that he consulted Doctors J. P. and J. C. Sanders at Sanders Clinic in Shreveport, who dressed his wounds, and he returned to work on or about September 12, 1960; that he worked under difficulty, pain and inconvenience, requiring periodic absences for treatments and rest, and his condition gradually worsened to such an extent that he was dizzy, weak, and suffered blackout spells; that he sought treatment from Dr. Charles Walls of Springhill, and was hospitalized there for about one week, and that Dr. Walls referred him to Dr. Dan E. Russell, Shreveport, Louisiana, a specialist in internal medicine and cardiology, who, on or about July 5, 1962, recommended that plaintiff change his trade or occupation to less hazardous employment; that on July 19, 1962, while at work at his usual duties, at about 1:00 p. m., he suffered a blackout spell and was unconscious for an undetermined period of time; that the regular physician of his employer, Dr. Jack B. Bird-well, was called to the plant to administer treatment to him; that as residuals to his electrical shock, plaintiff suffers from severe adrenal damage, resulting in a syndrome of weakness, asthenia, hypertension, electrolyte imbalance, lowered body temperature, and easy susceptibility to disease and injury, all of which caused or contributed to his fainting spell of blackout on July 19, 1962, the earlier industrial trauma having an influence on his latest disability starting July 19, 1962; that either separately and independently, or in combination, plaintiff suffers total disability to perform his usual duties for his employer, or similar duties, as a result and consequence of injuries from the August 3, 1960 occurrence and the July 19, 1962 exhaustion ; the exhaustion on July 19, 1962 being pleaded alternatively if it be found that disability does not solely result from the August 3, 1960 injuries; that in the further alternative, as a result of injuries and physical consequences yet undetermined, either from his related occurrences herein or as a result of inhalation of gases and fumes from hot asphalt or ingredients handled in preparation of commercial shingles and other products, he is totally and permanently disabled to perform his usual duties and occupation, or similar type employment; further in the alternative, that he suffered a heat stroke or heat exhaustion on July 19, 1962, rendering him totally and permanently disabled to perform his usual or similar type employment; also that plaintiff suffered and sustained facial disfigurement and disfigurement of his back from his August 3, 1960 burns, in the form of keloids, which is permanent.
*263 “Defendants in their answer admitted the employment of plaintiff as a slate man, and that his work was hazardous under the Louisiana Workmen’s Compensation Act; that plaintiff received burns to his head, hack and arms, while in the course and scope of his employment on or about August 3, 1960, at about 4:30 a. m., and that he was taken to the P & S Hospital in Shreveport, Louisiana. Defendants also admitted that plaintiff was discharged from the P & S Hospital on or about August 5, 1960, and that he consulted Dr. J. P. Sanders, and that plaintiff returned to his work on or about September 12, 1960, continuing with his regular duties. Defendants also admitted that plaintiff had been under the treatment of Dr. Charles Walls of Spring-hill, Louisiana,' who referred him to Dr. Dan E. Russell of Shreveport, a specialist in internal medicine and cardiology, and also that Dr. Jack B. Birdwell did see and examine plaintiff at the plant of Bird & Son, Inc. on or about July 19, 1962.
“This case was tried on March 15 and 21, 1963. However, it was held open for the taking of the depositions of some of the doctors, and eleven of them have testified as to the injuries to this man.
“On April 16, 1963, defendants filed a plea of prescription, setting forth the fact that the suit was instituted on July 30, 1962 for workmen’s compensation benefits as a result of an accident which occurred on August 3, 1960, and suit not having been instituted within one year from the date of the accident, or the date upon which compensation payments were last made to plaintiff; that his right of action has prescribed under the provisions of LSA-R.S. 23:1208.
“In view of our conclusion on the merits of this case, we find it unnecessary to rule on the plea of prescription.
“As we have mentioned before, eleven doctors testified concerning their examinations of this plaintiff; seven of whom were called by the plaintiff, and four of whom were called by the defense.
“As every one of these doctors, with the exception of Doctor Birdwell and Doctor Rushing, who were the company doctors for Bird & Son, were informed by the plaintiff prior to their examination that he had been burned by electricity, from which they concluded that he had received an electrical shock, the testimony of all of plaintiff’s doctors is predicated upon this fact. And of course, without this fact being established, their opinion concerning the disability of the plaintiff is of no value.
“It is shown conclusively by the testimony, and defendants admit, that plaintiff received bums about the face, back, and left forearm while on duty on August 3, 1960, but the important and decisive question is whether these were flash or thermal burns, or were electrical burns which were accompanied by shock, which is the basis for the opinions of all of plaintiff’s doctors who have testified to plaintiff’s disability.
“The first doctor to see the plaintiff was Dr. R. E. Rushing, a physician and surgeon, partner of Jack B. Birdwell, who is also a physician and surgeon and the regular doctor for defendant Bird & Son. Doctor Rushing saw plaintiff in the emergency room of the P & S Hospital a short time after the accident, and testified that he wrote on the chart at the time what plaintiff hold him about how the burns were sustained, and defendant offered in evidence the hospital chart as Exhibit D-5, which shows the following history: ‘He states that he received flash burns at work wheii a “kettle”.exploded. He does not know the cause of the fire.’ Doctor Rushing further wrote on the chart: ‘Superficial burns of back and .face — eye brows singed — none of the burns appear-deeper than shallow 2nd degree.’ The chart shows admittance time as 5:15 a. m. on August 3, and Doctor Rushing testified that he saw the plaintiff about the time noted on the hospital admis,sion sheet, that is, about 5:15 in the morning.
*264 “The next doctor to see plaintiff was Dr. Jack B. Birdwell, the regular doctor for Bird & Son, who is a physician and surgeon who has been specializing in industrial work for approximately 25 years. Doctor Bird-well testified that he saw the plaintiff at the hospital about 7:30 or 8:00 o’clock on the morning of August 3, 1960 (sic), and described his injury as some type of a flash burn. He further testified that plaintiff told him that a torch had exploded some gases of some type and he didn’t know what they were. Both Doctor Rushing and Doctor Birdwell denied that plaintiff ever told either of them that he received an electrical shock or was burned by electricity. Dr. Birdwell also testified that the plaintiff insisted on going home and was discharged from the hospital on August 5th, although he wasn’t quite well.
“Dr. Jason P. Sanders testified that plaintiff came to see him at his clinic rather late in the afternoon of August 6; that he treated him from August 6 through September 9, and let him go back to work on September 12; that he saw plaintiff on February 3, 1961, and hospitalized him for a severe kidney infection, and treated him for this kidney condition through February 24, 1961. Doctor Sanders further testified that the plaintiff told him that he went to turn on some switch and had a little difficulty with it and then there was a flash of some sort, electric flash, and then he blacked out or lost consciousness, and the next thing he knew was some time later when he- regained consciousness and found himself 50 or 75 feet from where he had lost consciousness.
“That Doctor Sanders was basing his 'opinion that plaintiff was disabled due to the electric shock is illustrated by his testimony in answer to the question: ‘Do you relate his disability to his original injury accident?’ to which he answered, ‘At first we thought he was well, and then we had the two or three other spats, which we could all tie back into the electrocution almost that he had had on August the third, and with the change in personality and so forth that he had had and his weak spells which he reported on numerous occasions.’ And again, in answer to the question, ‘Do you relate his disability to the burns and injuries he received in August of I960?’ he answered:
“ ‘Well, in looking back in retrospect you realize that the man had a severe electrical shock, which evidently came in I believe on this, and he got flash burns all over the face, the neck, the chest, the arms, large amounts of the skin sloughed off here, and it evidently affected some part of the brain.’
“It is thus seen that the opinion of Doctor Sanders, along with all of the other doctors who testified that there was a connection, or a possible connection, between the burns to plaintiff and his disability, was predicated upon the fact that he had received an electrical shock, and therefore, the question as to whether or not plaintiff received an electrical shock at the time he received the burns on August 3, 1960 is the determinative factor in this case.
“Our law is clear that a workmen’s compensation claimant bears the burden of proof and must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. See the recent case of Taylor v. Hawkins, La.App., 153 So.2d 192, and cases cited therein. And, as the basis of the opinion of all of the doctors that plaintiff is disabled and would be entitled to workmen’s compensation is predicated on the fact that he received a severe electrical shock, we will examine the- evidence to determine whether or not plaintiff has sustained the burden of proof in connection with this determinate element of the case.
“We will first take the testimony of the plaintiff himself:
“ ‘And I go to my outside mixer, and what we call the agitator on the inside of the mixer seemed to be hung, when I punched the button, that is on a button to a séparate switch of the VPI, well, it didn’t séem to run; well, *265 I believe I went downstairs and told Mr. Cook I needed some help, and he says, “Well, I’ll be up there in a minute,” so I went on back and out to the mixer. Well, the next thing I knew, Cook was leading me downstairs, or I’d seen him coming up after me.’
“And on cross-examination, after testifying that he went back and got the agitator blade going, he testified as follows:
“ ‘A. I checked my pump, yes, sir, turned it on, in other words; of course not turned no asphalt on.
“ ‘Q. That is the VPI switch?
“ ‘A. That is right.
“‘Q. All right; Did you go over there to turn it on?
“ ‘A. Well, I just reached to turn it on; it was the distance of my button switch, where I could stand in the same place; I did’t have to move anywhere.
“ ‘Q. All right, you reached over there to turn on the VPI switch, is that it?
“ ‘A. That is right.
“‘Q. Then what happened?
“ ‘A. Well, that is about the last I can remember. That is where I got burned.
“ ‘Q. Did you touch the switch?
“‘A. Well, I know I did.’
“And later:
“ ‘Q. All right, you remember reaching for the switch?
“ ‘A. That is right.
“ ‘Q. All right. And then what happened ?
“ ‘A. Well, the next I knew, Mr. Cook was coming up the steps on the inside, of course that was plumb back in the other building.
“ ‘Q. So the last thing you remember was reaching for this VPI switch ?
“ ‘A. Until I saw Mr. Cook coming back up there.’
“Plaintiff further testified that he did not remember making the remark that he received the burns when a kettle exploded, as testified to by Doctor Rushing, and as shown on the hospital report.
“Tommy Ray Cook, who was working for Bird & Son in the department of mechanical maintenance and welding at the time plaintiff was burned, and who at the time of the trial was working for Universal Oil Products, testified that he remembered Russell coming up to him while he was working on the job, and telling him that the mixer wouldn’t start, and that he told Russell that he would be up in a minute; that he later went to the first mixer, which was not the one that Russell had spoken to him about, so he walked out on the roof where he could see the other mixer, this mixer being in a room approximately twelve by twelve, and saw Russell walking back across the catwalk, coming from this outside mixer room; that Russell would take a few steps and make motions to his face and head with his hands, and take a few more steps, and he walked up to where he was and Russell said something about being burned, and he noticed that his eyebrows and his sideburns were singed to his cap. Cook further testified that Russell did not say anything to him about being burned, but you could tell that his eyebrows and sideburns had been singed; further, that he did not go into the mixer room.
“The next party to see plaintiff was Earl F. Johnson, Jr., maintenance foreman of Bird & Son. This witness testified that he first observed Russell coming up the aisle of the main floor of the roofing machine alongside the saturator with Tommy Ray Cook walking along beside him, the two of *266 them talking; that Cóok walked up to him and told him Russell had been burned, so he walked over to Russell and saw that his ears were scorched, and his eyebrows and around the back of his neck; that he asked Russell what happened, and Russell told him that he got burned on the outside on the little mixer; that he told Cook to take Russell and help him change clothes, and he would run up to see if anything was on fire, and would then come back and take Russell to the hospital; that he found no fire, and everything was in order, with the mixer in operation; that there were no blown switches, and the doors were closed, and no evidence of any explosion or fire; that he then went downstairs and, after Russell changed his clothes, took him to the P- & S Hospital, walking with him up to the emergency room; that Russell answered the questions the nurse asked him at the hospital; and that Russell never at any time said anything to him about getting an electrical shock. Mr. Johnson further testified that there was no gas in the room wjiere the mixer was located, from which there could have been a fire explosion.
“Philip O.’Johnson, roofing machine foreman and direct supervisor of plaintiff, testified that after Russell came back to work after the accident that Russell told him he didn’t know how it happened; that Russell told him he was standing in the doorway of the little house outside, what they called the outside mixer, and a ball of fire burnt him, and that was all he knew.
“Before the trial of this case, Virgil Jackson Rutledge, a master electrician of the city of Shreveport, employed.by Howard Rogers Electric Company, and Walter C. Robertson, a mechanical engineer and field engineer for the Square D Company, which manufactures switch boxes to the VPI both testified that they inspected the switches on the VPI machine and found no visible evidence that there had been any kind of electrical explosion or malfunction. And Earl F. Johnson, Jr., testified that the switch boxes examined by Mr. Robertson and Mr. Rutledge were the same boxes that were in operation at the time Russell was injured, on August 3, 1960.
“While we have been unable to reach a conclusion as to how plaintiff received his burns, plaintiff has failed to prove that he received an electrical shock, the basis of the opinions of all the doctors who testified that he was at the time of the trial disabled to such an extent that he could not perform the duties that were required of him while an employee of Bird & Son. And having failed to prove any of his alternative allegations of injury the demands of the plaintiff are rejected.”
Counsel for appellee has directed our attention to the work record of the petitioner who returned to his customary work on September 12, 1960, when released by Dr. J. P. Sanders and worked full time for a period of nine months to the day, and missed only two days from work. This statement is correct and was not mentioned in the opinion of the trial judge.
The appellant earnestly insists that he has borne the burden of proof and shown that he did receive an employment injury by electrical shock. Citation of authorities is hardly necessary for the principle that a workman compensation claimant bears the burden of proof and is required to establish his claim to a legal certainty by a reasonable preponderance of the evidence and speculation, conjecture, mere possibility, and even unsupported probability are not sufficient to support a judgment.
After a careful review of the record, we approve of the decision as reached by the trial court, and hold that plaintiff has not established that his injuries were caused by electrical shock. Without proof of this fact, the disabilities of which he now complains are not shown to be causally connected with the accident. For these reasons there is no manifest error in the judgment complained of.
Accordingly, the judgment from which appealed is affirmed at appellant’s cost.