AYRES, Judge.
Plaintiff seeks, by this action, to recover of his former employer and his compensation insurer, workmen’s compensation at the maximum statutory rate for total and permanent disability, as well as statutory penalties and attorney’s fees, less compensation previously paid, because of accidental injuries allegedly sustained August 2, 1961, while he was engaged in the performance of the duties of his employment as a common laborer in road construction in Morehouse Parish.
Plaintiff’s action against the employer, a resident of the State of Arkansas, upon whom service of citation was never had, was dismissed for lack of jurisdiction; and, as to the defendant surety, American Casualty Company, plaintiff’s demands were rejected after trial of the case on its merits. The decision was predicated upon a finding that plaintiff had recovered from his injuries and was no longer disabled following the period for which he was paid compensation. Plaintiff’s appeal concerns only the duration of his disability resulting from the accidental injuries sustained by him. No issue is raised or contention made as to the dismissal of plaintiff’s action against his employer.
A road machine and asphalt spreader, near which plaintiff was working, was struck by a truck. As a result of the force of this impact, a lever of the spreader likewise struck plaintiff with considerable force and violence and knocked him down. Plaintiff was struck near the armpit on his left side. Plaintiff’s injuries consisted primarily of five broken ribs, some of which were broken twice. Plaintiff was paid compensation following the accident until his discharge on January 23, 1962.
As has often been emphasized, there are certain well-established rules in the jurisprudence by which we must be guided *194 in resolving the issues presented in compensation cases such as those involved here. That a compensation claimant carries the burden of proof and must establish his claim to a legal certainty and by a reasonable preponderance of the evidence is a rule well established in the jurisprudence of this State. The establishment of such a claim only to the extent of possibility or probability is insufficient to sustain a judgment in his favor. Morris v. Supreme Bedding & Furniture Mfg. Co., La.App.2d Cir., 1960, 126 So.2d 412; Card v. Southern Builders, Inc., La.App.2d Cir., 1960, 117 So.2d 675; Mitchell v. Brogdon, La.App.2d Cir., 1958, 106 So.2d 531 (writ denied); Roberts v. M. S. Carroll Co., La.App.2d Cir., 1953, 68 So.2d 689.
 We are also concerned here with the rules pertaining to the weight that should be given the testimony of the several medical experts. In this regard, the rules were pointed up in the Morris case, wherein we stated:
“In weighing medical opinions, it has been frequently held by our courts that the testimony of an attending physician should ordinarily be accorded more weight than that of a physician who has made an examination for purposes other than for treatment. * * * And, where the injury complained of falls within a particular field of medicine, the testimony of a specialist in that field is entitled to more weight than that of the general practitioner.”
Treatment of injuries involving broken or fractured bones comes within the field of the orthopedic specialist.
The foregoing rules appear to have special application in the instant case, for it must be conceded that Dr. Jack B. Golson, plaintiff’s treating physician, was a general practitioner, as were Drs. William V. Gamier and Irving J. Wolff, examining physicians; Dr. Roy IT. Ledbetter, Jr., also an examining physician, was an orthopedist.
Dr. Golson first saw plaintiff on August 3, 1961, the day following the accident. On that occasion, plaintiff’s chest wall on the anterior and left side was tender. X-rays disclosed the fracture of Ribs 5 through 9 posteriorly, and Ribs 3 through 5 anteriorly. Plaintiff was hospitalized for rest and observation, and was given sedation for pain. Following his discharge from the hospital, August 7, 1961, plaintiff continued to experience pain on motion of his left arm and on palpation of the rib cage. He continued as a patient and visited the doctor’s office as an outpatient until January 23, 1962, when he was discharged. An examination of June 1, 1962, disclosed no objective cause for plaintiff’s complaints of soreness in his chest. The ribs were found to be, as they were on the date of his discharge, well healed. Plaintiff’s left arm and shoulder, in the opinion of the doctor, were normal. No objective basis could be found to support plaintiff’s contention that he could not use his left arm.
Dr. Ledbetter examined plaintiff under date of May 7, 1962. X-rays made at the time revealed that the fractured ribs were thoroughly healed. There was no evidence of any damage to the lungs. Plaintiff’s chest expansion was normal. The doctor found no objective evidence of any residual disability that could be attributed to the injury, and expressed the opinion that plaintiff had fully recovered and was able to return to work. Dr. Ledbetter was in agreement with Dr. Wolff that there was a slight concavity of the chest wall which, however, in his opinion, was in no manner disabling.
Drs. Gamier and Wolff based their opinions of plaintiff’s continued disability primarily upon plaintiff’s subjective corn-plaintiffs of pain which they attributed to a possible impingement or involvement of the nerves with the bones in the healing process. Such an involvement of the nerves was not established.
The consensus of all the medical experts was that the broken ribs had satisfactorily healed. Drs. Wolff and Gamier were, how *195 ever, of the opinion that plaintiff was disabled from the performance of the duties of a common laborer. Dr. Golson, the treating physician, and Dr. Ledbetter, the orthopedist, were of the opinion that plaintiff had recovered from his injuries and was fully able to return to work. Plaintiff had been allowed a considerable period beyond the maximum time usually allotted for recovery.
The record further establishes that, since his injuries, plaintiff has engaged in pulling or gathering several acres of corn, a task not insignificant so far as manual labor is concerned.
The opinions of Drs. Ledbetter and Gol-son were, as heretofore stated, that, since plaintiff’s ribs had solidly healed, with no sign of injury to the lungs and with normal chest expansion, there was no residual disability attributable to the injuries that would prevent plaintiff from performing his usual work as a common laborer.
The trial court found that plaintiff had fully recovered and could return to his work. This conclusion finds ample support in the record. Applying the principles here-inabove referred to in evaluating the testimony of the medical experts, we find no basis for disagreement with the conclusions reached by the trial court.
Plaintiff, however, insists that defendant’s failure to take the testimony of Dr. Biggs—who, plaintiff contends, was one of his attending physicians—should be construed against defendant on the presumption that a litigant’s failure to produce a material witness without accounting for his absence raises a presumption that, had the witness testified, his evidence would have been unfavorable to the litigant. Drs. Biggs and Golson were partners in the operation of a clinic. The evidence is not conclusive that Dr. Biggs treated plaintiff or that plaintiff was in fact referred by defendant to Dr. Biggs. Dr. Golson was, as stated, the treating physician. Moreover, plaintiff had an equal opportunity to obtain the testimony of Dr. Biggs had he so desired.
The medical experts were apparently in agreement that plaintiff, on returning to work after a period of inactivity, would, to some extent and for a short period of time, experience some soreness of muscles and discomfort until his muscles became readjusted and oriented to his work. This is an unavoidable experience regardless of the delay in resumption of duties. Under these circumstances, such inevitable discomfort cannot be classified as pain under the rule that one who labors in pain is deemed disabled.
Complaint is further made that proper consideration and weight were not given to the lay testimony. The rule is that, where medical testimony is in substantial conflict, lay testimony may be resorted to in order to establish a claimant’s disability. The lay witnesses whose testimony was introduced consisted of the plaintiff’s wife, his brother, and two neighbors or acquaintances. The latter two testified that they would not hire plaintiff to do manual labor. These witnesses, however, were formerly only common laborers themselves, one of whom had not worked for nine years and the other, for five years. The nature of the lay testimony is not such as to have any substantial bearing upon the question of whether plaintiff is disabled.
The treating physician, as heretofore pointed out, as well as the orthopedist, was of the opinion that plaintiff had fully recovered and was able to return to work. There was no great variance between their findings, as to the injuries sustained by plaintiff, and the findings of the two general practitioners, whose testimony was offered on behalf of plaintiff, who, from subjective complaints and from the assumption of nerve involvement, reached the conclusion that plaintiff was disabled. The lay testimony, even if accorded its maximum possible weight, could not, with the testimony of the examining physicians, outweigh the positive findings and conclusions of the treating physician whose testimony is sup *196 ported and corroborated by that of the orthopedist.
The conclusion is inescapable that plaintiff has not established his claim by a reasonable preponderance of the evidence and to such a degree of legal certainty as to entitle him to judgment.
The judgment appealed is, therefore, affirmed at plaintiff-appellant’s cost.
Affirmed.