HOOD, Judge.
This is a workmen’s compensation suit instituted by O. K. Harrell against his employer, R. C. Tanner, and the latter’s compensation insurer, Southern Pulpwood Insurance Company. Plaintiff claims compensation benefits based on total and permanent disability, plus penalties and attorney’s fees. After trial on the merits, the trial court rendered judgment in favor of plaintiff for the sum of $12.00, being the amount of a hospital bill which defendants had failed to pay, but condemning plaintiff to pay all costs of this suit. Plaintiff has appealed.
The evidence shows that plaintiff sustained an accidental injury to his knee on May 11, 1960, while working as a pulpwood cutter for defendant Tanner. As plaintiff was sawing the limb of a tree with a power saw, the limb split and a part of it struck plaintiff’s right kneecap causing a deep laceration. Plaintiff was taken immediately to Dr. Clifton E. Harris, a general practitioner, who cleaned and sutured the laceration, gave plaintiff a tetanus tox-oid booster and sent him to the hospital for X-rays, which were made the same day. Dr. Harris treated plaintiff from the day of the accident until June 16, 1960, when he discharged him as being completely recovered and able to return to his full duties as a pulpwood cutter.
Weekly compensation benefits were paid to plaintiff from the date of the injury until June 29, 1960, but no further payments of compensation have been made since the last-mentioned date. Plaintiff contends that as a result of the accident he sustained a tear of the lateral semilunar cartilage of the right knee, that he has been disabled continuously since the date of such accident, and that his disability is of a permanent nature. He testified that a splinter “worked up out” of the wound while he was being treated by Dr. Harris, that two more splinters worked out of it after he had been discharged, that the knee became infected during and after the treatment by Dr. Harris, that it still swells frequently, that it gives way and “catches” several times a day, and that it pains him when a “lot of walking” is done.
Defendants concede that plaintiff sustained a compensable injury on May 11, 1960, and that he was disabled from that date until June 16, 1960. They contend, however, that he had fully recovered by the last-mentioned date and that he has had no disability referable to the accident or knee injury since that time. The principal issue presented on this appeal, therefore, is whether plaintiff has had any disability resulting from the above-mentioned injury to his knee since the payment of compensation benefits were discontinued.
After being discharged by Dr. Harris, plaintiff was examined by two orthopedic surgeons, Dr. T. E. Banks and Dr. Ray E. King, and by two general practitioners, Dr. Edward Norton and Dr. Howard Hansen.. Plaintiff relies principally upon the testimony of the two general practitioners, Dr. Norton and Dr. Hansen, to support his claim of disability.
Dr. Norton examined plaintiff on September 14, 1961, about 16 months after the accident. He found no objective signs of disability except that he felt “a little gritting feeling” in the knee, which he described as more of a palpable sensation than an audible one. From the history given by plaintiff and this examination, Dr. Norton diagnosed plaintiff’s condition as an “internal derangement of the knee most likely a tear of the semilunar cartilage,” *283 •and he recommended that plaintiff be seen ¡by an orthopedist “to confirm my diagnosis.”
Dr. Hansen examined plaintiff on De■cember 19, 1961, and found no objective signs of injury except that on slowly expending the right leg from a fully flexed ■position a “click” was palpable in the knee joint. He also found, and considered as •an objective sign of disability, that internal rotation of the right lower leg elicited complaints of pain by plaintiff. Dr. Hansen ■testified that plaintiff’s history and his physical findings “are compatible with a tear of the lateral semilunar cartilage of the ■right knee.”
The other physicians who testified disagree with Dr. Norton and Dr. Hansen as 'to plaintiff’s condition. Dr. Harris stated •that while he was treating plaintiff there ■were no complaints or findings which would indicate an injury to the ligaments, cartilages, the meniscus or other parts of the knee, that the treatment of the laceration was routine, that it healed completely without any complications, and that he did not ■see or remove a splinter from the wound, .as testified by plaintiff. He examined plaintiff again on January 16, 1962, shortly before the trial, and at that time he found no atrophy of the right leg and no other signs of disability. He testified that in 'his opinion plaintiff had fully recovered from the injury by June 16, 1960, and that he has had no disability relating to the ■.right knee after that date.
Dr. Banks examined plaintiff on April 24, 1961, and Dr. King examined him on January 3, 1962. Neither of these orthopedic surgeons found any objective signs •of injury or disability referable to the knee. They were unable to find any crepitus or '“clicking” in the knee, and they testified that in their opinion plaintiff did not have a tear of the lateral semilunar cartilage or any other disabling condition in his knee. In the opinion of both of these doctors, •plaintiff had fully recovered from any injury to his knee which he may have sustained in May, 1960, and that he was able to perform hard manual labor.
Our courts have frequently held that in weighing medical opinions the testimony of an attending physician ordinarily should be accorded more weight than that of a physician who has made an examination for purposes other than for treatment. Also, where the injury complained of falls within a particular field of medicine the testimony of a specialist in that field ordinarily is entitled to more weight than that of general practitioners. See Morris v. Supreme Bedding & Furniture Manufacturing Co., La.App. 2 Cir., 126 So.2d 412, and authorities cited therein. In the instant suit we think the testimony of Dr. Harris, the treating physician, and of Dr. Banks and Dr. King, specialists in orthopedic surgery, are entitled to greater weight than the opinions expressed by the two general practitioners, Dr. Norton and Dr. Hansen, who examined plaintiff long after the accident occurred for purposes other than treatment.
The lay evidence shows that although plaintiff has not returned to work as a pulpwood cutter since the accident occurred, he did accept employment as a nursing aide at the Charity Hospital in Pineville shortly after being discharged by Dr. Harris and he has continued to work as such up to the present time. Although four fellow employees of plaintiff testified that the latter had frequently complained of his knee, none of them had ever observed the knee “giving way” or “catching,” in spite of the fact that plaintiff said that occurred several times each day, and only one of these witnesses testified that he had seen plaintiff limping. Both the Director of Nurses Services and the Night Supervisor at the Charity Hospital where plaintiff is now working testified that plaintiff’s duties at that institution involved a great deal of walking and that they had never observed him limping or having any difficulty with his knee. In our opinion, the lay testimony indicates that plaintiff has had no disability *284 referable to the knee since he was discharged by the treating physician in June, 1960.
After considering all of the evidence, we conclude, as did the trial judge, that plaintiff has failed to establish that he has had any disability in his right knee since June 16, 1960, being the date on which he was discharged by Dr. Harris. He received compensation benefits during the period of his disability, and accordingly, his demands for additional compensation payments were properly rejected by the trial court.
The evidence establishes that a $12.00 bill was incurred by plaintiff at the Baptist Hospital for X-rays made at the request of Dr. Harris while plaintiff was under his treatment. Defendants admit that they owe this bill, but the record is devoid of any evidence tending to show that a demand was ever made upon defendants for the payment of this account, or that prior to this suit defendants were aware of the fact that such an indebtedness existed. In our opinion, the trial court correctly awarded plaintiff the amount of this hospital bill, but rejected plaintiff's demands for penalties and attorney’s fees.
Plaintiff further contends that the trial court erred in condemning him to pay all costs of this suit. Article 1920 of the LSA-Code of Civil Procedure provides that “the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.” Considering all of the facts in this case, we find that the trial court did not abuse its discretion in assessing all costs of this suit to plaintiff.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing
En Banc. Rehearing denied.