McBRIDE, Judge.
Mrs. Gertruda Wiewiarawska was injured on September 24, 1963, while riding as a passenger in a taxicab which collided with another vehicle. Claiming to have been seriously injured, Mrs. Wiewiarawska sued the owner and the driver of the cab in solido for a large sum; her husband joined in the suit and claimed of the same defendants past and future loss of his wife’s earnings and past and future medical expenses incurred by him. Pending trial of the case in the lower court, the husband died, and by order of court, to which there was no objection by defendants, the wife was authorized to prosecute the claims which her husband had asserted. In due course *833 the case was tried, and Mrs. Wiewiarawska obtained judgment against defendants for $3604, from which she appealed and is seeking an increase of the amount. The defendants answered the appeal praying for a reduction.
There is no question Mrs. Wiewiarawska was injured. However, she declined the offer of the cab’s driver to convey her to a hospital.
She consulted her private physician, Dr. Peter Salatich, a general practitioner, the next day. Appellees point out that Dr. Peter Salatich stated he first saw her on September 7, 1963, which was a date prior to the accident. But Dr. Salatich cleared up the discrepancy, and we are satisfied that Mrs. Wiewiarawska first visited him on the day she mentioned. Dr. Salatich saw her again on October 1, 1963, and treated her 13 times to November 11, 1963, during which interval he “gave her the light”, meaning, of course, heat therapy, and rendered a bill for $104. Her condition had not improved, so Dr. Peter Salatich referred her to Dr. Blaise Salatich, an orthopedic surgeon. The treatment of Dr. Peter Salatich was for what he diagnosed as a contusion of the left arm and deltoid muscle.
Dr. Blaise Salatich initially examined Mrs. Wiewiarawska on November 18, 1963, and was of the opinion she had sustained a crushing-type injury of her face, a contu-sional injury of her left thigh, and a crushing-type injury of her left shoulder and upper left arm entailing the tearing of the muscle tendon rotator cuff. In a short time the injuries to the face and thigh cleared, but the left shoulder and arm pathology persisted. Dr. Blaise Salatich restricted plaintiff’s physical activities and treated the shoulder and arm with muscle relaxants and prescribed a pain killer; plaintiff received diathermy and physiotherapy treatments in the doctor’s office on 81 occasions. In the fall of 1964, about a year after the accident, Mrs. Wiewiarawska began to show progress. However, she still had a limitation of motion in the shoulder with pain and had not attained the full use of her arm. Dr. Blaise Salatich thought Mrs. Wiewiar-awska permanently injured, and his prognosis was that her condition, which would continue for an indefinite period, will require further medical attention. At the time of the trial, Dr. Salatich was still treating plaintiff. His bills for services aggregated $530.
Two medical experts examined Mrs. Wie-wiarawska on defendants’ behalf. Dr. Charles C. Jaubert, a general practitioner, saw her October 24, 1963; the patient was suffering pain, could only move her arm 75 degrees, and in Dr. Jaubert’s opinion, she suffered from a contusion of the left shoulder. Dr. Jaubert thought she should see an orthopedist.
Dr. George C. Battalora, Jr., an orthopedic surgeon, examined Mrs. Wiewiar-awska December 30, 1963, and characterized her condition as an adhesive pericap-sulitis of the left shoulder, which means a “frozen shoulder,” which the doctor said resulted from disuse. Dr. Battalora disagreed with Dr. Blaise Salatich by stating that prolonged treatment for such a condition by means of physiotherapy was not “indicated,” and that if there was no improvement in the patient’s condition within 3j4 months, his opinion was that the shoulder should be manipulated. He explained the nature of that treatment: “It involves bringing the arm through a full range of motion, overhead, with full internal and external rotation under anesthesia.” According to Dr. Battalora, such manipulations are successful in about 85 percent of cases. He stated his fee for performing the procedure would be $50 and the patient would incur hospital expenses of approximately $150. He thought that with two months of therapy after the manipulation the shoulder would be in a good condition.
Even' according to the defendants’ medical experts, Mrs. Wiewiarawska’s injuries were far from being of a minor scope, and we cannot overlook the statement of Dr. Battalora that 15 percent of the cases in *834 •which treatment such as 'he thought should be administered would not respond satisfactorily.
Considering all of the medical testimony, we unhesitatingly formulate the opinion that plaintiff’s injuries were and are serious and painful. We think, as was stated by Dr. Blaise Salatich, plaintiff sustained a tearing of the muscle tendon rotator cuff.
We feel justified in accepting the testimony of the attending physician over that of other experts who merely examined the patient. See Nixon v. Pittsburgh Plate Glass Company, La.App., 161 So.2d 361; Trascher v. Eagle Indemnity Co. of New York, La.App., 48 So.2d 695.
The trial judge did not intimate what portion of the judgment was intended to compensate Mrs. Wiewiarawska for personal injuries or what amount was for loss of wages. Her medical expenses amounted to $679, so this would leave an allowance of $2925 for personal injuries and loss of wages, which amount is manifestly inadequate.
Plaintiff, at the time of the trial, was 67 years old. She was emphatic in her claims that despite her age, she was a tennis instructor as well as a teacher of piano and German. We notice Mrs. Wiewiarawska’s husband claimed $3000 for loss of past and future earnings. Yet, her counsel' argues that she lost $1600 during 1963 and 1964 and she could be expected to lose $7500 in the future, or a total of $9100. Counsel computes plaintiff’s life expectancy at 10 years and contends her yearly earnings of $1200 projected for said period and discounted to present value would amount to $7500.
It is said plaintiff was forced to decrease the number of piano pupils and to eliminate all tennis lessons to advanced students. She had been a tennis instructor at the YWCA for some years before the accident, but the amount of salary earned there does not appear. She was able to retain her employment as a ballet accompanist at Tulane University.
It appears that on September 9, 1963, or just two weeks before her accident, Mrs. Wiewiarawska obtained steady employment with Junior Universities of America (JUNO) in New Orleans teaching German, tennis and piano. It is not shown that she lost any considerable amount of time from this employment. She continued her duties with JUNO until April 6, 1964, and terminated her employment only because of said employer’s insolvency. She received but $184 during the whole time she worked for JUNO'. Her monthly salary was to be $222. It is reasonable to suppose her duties with JUNO (six hours a day) would have militated against the number of her private students.
No one could possibly tell from the record how long Mrs. Wiewiarawska will be incapacitated or.what she would earn during that uncertain period. Although it is impossible to determine an exact evaluation of the loss of past or future earnings, plaintiff, in our opinion, has shown a basis for some allowance. As a tennis instructor and piano teacher she was and is considerably handicapped.
Taking into consideration Mrs. Wie-wiarawska’s age, normal physical limitations and life expectancy, we think the evidence warrants an increase in the award. Our considered opinion is that her physical injuries, pain and suffering, past medical expenses, incalculable future expenses and loss of earnings would entitle her to recover $6000, which amount we believe would do substantial justice to all.
 There is no rule or standard that can be used in making an award for physical injuries, and a wide latitude of discretion is vested in the court. Although the quantum in each case must necessarily depend upon the particular facts and circumstances therein, a degree of uniformity of awards in court decisions should be maintained as far as is possible. In Richoux v. Grain Dealers Mutual Insurance Company, La. App., 175 So.2d 883, our brothers of the *835 Third Circuit dealt with an injury to the tort victim’s rotator cuff.
Our task was to review all of the facts and circumstances on which the lower court based the quantum of award, and the review was confined to determining whether there has been an abuse of the “much discretion” vested in the trial judge in assessing damages. After the review required of us of all the facts and circumstances, we find that the trial court did abuse his discretion, and accordingly we deem that the award should be increased as to the amount aforestated. See Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64.
For the reasons assigned, the judgment appealed from is amended so as to increase the award to Gertruda Wiewiarawska to $6000, and as thus amended and in all other respects the judgment is affirmed. Defendants are cast for the costs of this appeal.
Amended in part, and affirmed.