SAMUEL, Judge.
This is a suit for personal injuries resulting from an intersectional collision involving two automobiles. Plaintiff, a guest passenger in one of the cars, was an unmarried 20-year-old minor at the time of the accident; she reached the age of majority prior to the filing of this suit. Her claim is solely for damages for personal injuries; because she was a minor at the time they were incurred, special damages, such as medical, were sought and recovered by her father in another suit. Defendants are Rose F. Buchanan, driver of the other car involved in the accident, and Kenilworth Insurance Company, the liability insurer of the Buchanan vehicle.
After trial there was judgment in favor of plaintiff and against the two defendants, in solido, in the sum of $4,500. Only Kenil-worth, the insurer, has appealed therefrom and that appeal is limited to the question of quantum; appellant contends the award is excessive and seeks a reduction thereof. Plaintiff has answered the appeal seeking an increase in the award to the policy limit of $5,000.
Counsel for appellant has called our attention to the apparent fact that the individual defendant, Buchanan, was not served with process and did not make an appearance. As a result, they point out, we should reverse that portion of the trial court judgment which casts her as a defendant. We are unable to comply with that request. In view of the fact that Ken-ilworth has appealed only in its own behalf and no action, by appeal or otherwise, has been taken herein by the individual defendant, neither that defendant nor the question of the propriety of the judgment against her is before us. Accordingly, we do not pass thereon.
The collision occurred on January 1, 1964 when the defendant vehicle ran a red semaphore traffic light at high speed and violently struck the plaintiff car which was crossing on a green light. The impact knocked plaintiff to the floor of the car underneath the dashboard, injuring both legs. She was taken by ambulance to Metairie Hospital where she was seen by Dr. George C. Battalora, Jr. Testimony relative to plaintiff’s injuries was given by plaintiff and three- medical experts, Dr. Battalora, an orthopedic surgeon, Dr. J. Kenneth *210 Saer, also an orthopedic surgeon, and Dr. John S. Noell, a general practitioner.
Plaintiff testified as follows: Following the collision her right leg and left knee were hurting badly. After Dr. Battalora’s examination at the hospital she was given a prescription for pain and allowed to return home where she remained in bed. Thereafter she was treated by Dr. Battalora. During the Easter holidays of 1964 she underwent surgery for the left knee. She continued to have pain in that knee at the time of trial on December 6, 1965, just about two years after the accident. The pain is present almost all of the time, especially with weather changes, and hurts badly after walking a distance or dancing for any length of time. She formerly did a great deal of water skiing but has discontinued that sport because of the resulting pain in the knee. She is now an elementary school teacher and the knee gives her trouble while performing her teaching duties. She does not find that the pain is less frequent than it was a year prior to the time of trial.
Dr. Battalora testified: He saw plaintiff at the hospital on the day of the accident. At that time she had contusions of the left knee, right ilium and right thigh. X-rays of the left knee were negative for fractures or dislocations. She was given a tetanus booster shot and codeine to relieve the pain, placed on an enzyme to reduce swelling, and sent home. She was seen again several days later at which time this doctor advised continued drug therapy and ordered her to restrict her activities. Plaintiff was seen periodically thereafter. By the middle of March all complaints referable to the right hip and thigh had subsided, but there was still tenderness to the medial aspect of the left knee. This tenderness was localized in the area of a small indurated mass in the soft tissue along the medial side of the knee joint. The doctor advised surgery. On March 25, 1964 surgery was performed under a general anesthetic and the mass was excised. The pathology report of the mass was chronic infection with fibrosis and cystic degeneration, a condition which could be brought about by a blow to the soft tissue. Plaintiff was discharged from the hospital the day after the operation. The sutures were removed on April 6 and she was advised she could resume her regular activities. When next seen on April 23, the examination was normal but plaintiff still complained of soreness in the inner side of the knee at the injured area, which soreness was a little less severe than it had been prior to surgery. She was placed on oral cortisone drugs. On May 13 this doctor found no effusion, localized tenderness, soft tissue swelling, instability, or atrophy and the McMurray test (to determine cartilage damage) was negative as it had been in prior examinations. However, plaintiff still complained of an aching sensation in the knee and she was advised to continue oral cortisone for two more weeks. Plaintiff was last seen on June 16, at which time she continued to complain of pain and discomfort on weather changes and after dancing. Except for scars in the medial aspect of the knee and the kneecap, there was no objective indication of injury or residual to the left knee area nor was there any evidence of atrophy in the lower left extremity. The examination was normal and the doctor could find nothing further to treat. He believed plaintiff did have some discomfort and pain but it had been subsiding over a period of the past several months and he felt it would clear up with more time. Inasmuch as the injury was to the soft tissues only, he did not expect any arthritic changes would result.
Dr. Saer examined plaintiff on only one occasion, November 16, 1964. At that time she complained of aching pain and discomfort in the left knee “off and on”, particularly upon increased activity. This doctor found no abnormality other than the operational scars. Various ligaments and motions were normal, the knee was stable and there was no atrophy. X-rays were normal and showed no evidence of arthritic changes in the knee. He felt no further treatment was needed. He did note that *211 plaintiff apparently had some aching pain in the knee. But he felt that pain was due to what he described as a “mild chondroma-lacia”, a softening or some deterioration of the cartilage. However, with reference to chondromalacia he stated he was speculating; chondromalacia cannot be diagnosed adequately although it is a common problem as one gets older.
Dr. Noell saw plaintiff on November 16 and November 20, 1965. She complained of pain in the left leg, particularly in the knee joint upon activities involving motion of the joint. He took her medical history, performed a routine examination of the knee and took x-rays of both knees for comparison. Motion was normal and x-rays were within normal limits. He found a slight atrophy of the soft tissue in the region of the left knee and left calf. In his opinion plaintiff is suffering from post traumatic arthritis of the left knee resulting in a partial permanent disability. He was of the further opinion that she will have trouble with the knee in the future and will require periods of medical and physiotherapy treatment from time to time.
Under the doctrine enunciated in the Supreme Court cases of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, and Ballanga v. Hymel, 247 La. 934, 175 So.2d 274, we have considered the amounts of awards granted or approved by appellate courts of this state for somewhat similar injuries to determine whether the award of $4,500 for the injuries suffered by plaintiff in the instant case is either excessive or inadequate to the extent that it constitutes an abuse of the “much discretion” given to the trial court by LSA-C.C. Art. 1934(3).
Our research has revealed that the determinative question involved is whether plaintiff suffers some permanent disability as a result of her injuries. Generally, awards involving permanent disability to the knee, ankle or leg are higher than the one made by the trial court in the instant case. See Kezerle v. Hardware Mutual Casualty Company, La.App., 198 So.2d 119; Clouatre v. Toye Brothers Yellow Cab Company, La.App., 193 So.2d 344; Ball v. Marquette Casualty Company, La.App., 176 So.2d 799; Christ v. State, Department of Highways, La.App., 161 So.2d 322; Wall v. Windmann, La.App., 142 So.2d 537. On the other hand in the absence of some permanent disability such awards generally are lower than the instant one. See Paternostro v. Travelers Insurance Company, La. App., 176 So.2d 165; Anselmo v. United States Fire Insurance Company, La.App., 169 So.2d 550; James v. Childs, Division of Kroger Co., La.App., 166 So.2d 77.
The award in the instant case was based on a finding by the trial judge that plaintiff did suffer some permanent disability. We cannot agree with this finding. Under our settled jurisprudence, other things being equal, the testimony of a treating physician must be accorded greater weight than that of one who was not the treating physician. See Carrier v. Aetna Casualty & Surety Co., La.App., 186 So.2d 445; Wiewiarawska v. Checker Cab Co. of New Orleans, La.App., 182 So.2d 832; Harris v. Great American Indemnity Company, La.App., 142 So.2d 594. And the testimony of a medical specialist in the field of his specialty is entitled to greater weight than that of a physician not so qualified. Williams v. North American Insurance Co., La.App., 169 So.2d 586; Harrell v. Southern Pulpwood Insurance Company, La. App., 155 So.2d 281; Taylor v. Hawkins, La.App., 153 So.2d 192.
The only medical testimony contained in the record to the effect that plaintiff does have a permanent disability is given by Dr. Noell, a general practitioner and not the treating physician. On the other hand both Dr. Battalora, the treating physician and an orthopedic specialist, and Dr. Saer, also an orthopedic specialist, testified there is no permanent disability. Accordingly, we must conclude plaintiff does not suffer a permanent disability which results from her injuries.
*212 However, the evidence leaves no doubt in our minds that plaintiff continued to suffer with her knee at the time of trial two years after the accident. We are also of the opinion that such suffering will continue for some undetermined, but apparently considerable, time in the future. Dr. Saer did not dispute the fact that she suffered pain at the time of his examination; and Dr. Battalora was satisfied that she suffered such pain. It is true Dr. Battalora felt the pain would subside and disappear in the future, but he did not know when this would happen and the pain had not disappeared or substantially subsided at the time of trial which occurred approximately eighteen months after Dr. Battalora’s last examination. Under these circumstances we conclude the $4,500 award is neither excessive nor inadequate to the extent that it constitutes an abuse of the “much discretion” of the trial judge.
The judgment appealed from is affirmed.
Affirmed.