SAMUEL, Judge.
This case arises out of a collision between two automobiles. Plaintiffs are husband and wife and one guest passenger. The husband seeks recovery of property damages to the automobile and medical expenses for the care and treatment incurred on behalf of his wife; the wife seeks damages for personal injuries suffered by her in the collision. The personal injury claim of the guest passenger was settled prior to trial and is not before us. Defendant is the insurer of the other vehicle involved.
Defendant has appealed from a trial court judgment in favor of the plaintiff-husband in the sum of $1,025.33 and in favor of the plaintiff-wife in the sum of $7,500. In the trial court, and in this court, the defense is based on an alleged absence of negligence on the part of the defendant driver and, alternatively, on contributory negligence on the part of the plaintiff driver. In this court defendant also alternatively contends the award for personal injuries is excessive.
Only four witnesses testified to the facts involved in the occurrence of the accident; Mrs. Ward, a plaintiff, and her guest passenger, Mrs. Corona, testified for the plaintiffs; Mr. Donald Twickler, driver of the defendant car, and his wife, who was a passenger in that automobile, testified for the defendant. The testimony of these four witnesses is not in conflict on the following material facts:
The collision occurred at the intersection of Causeway Boulevard and Bore Street in the Parish of Jefferson shortly before 7 p. m. on June 8, 1962. The plaintiff car was being driven by Mrs. Ward and its only passenger was Mrs. Corona. The de *132 fendant vehicle was being driven ’by Mr. Twickler and its only passenger was the driver’s wife. Causeway Boulevard consisted of four lanes, two on each side of a neutral ground. The plaintiff automobile had been proceeding on Causeway toward the lake, or north, and was making a U-turn on Bore Street to go hack on Causeway toward the river, or south. Its headlights were on and its windshield wipers and defroster were operating. It came to a full stop in the neutral ground at the Bore Street intersection where, after lowering a window on that side of the car, Mrs. Ward and Mrs. Corona looked to their right for traffic in the southbound lanes of Causeway. They saw only the headlights of one or two approaching automobiles which were sufficiently far away as to permit a safe entry into the southbound lanes. The plaintiff vehicle then proceeded into those southbound lanes, making a wide, sweeping turn for the purpose of going into the outer lane. Neither plaintiff witness saw the defendant car prior to the collision.
The defendant automobile was proceeding south on Causeway in the inner or neutral ground lane at a speed of 35 miles per hour. Its headlights were not on. The plaintiff car entered the inner southbound lane only a few car lengths in front of the defendant vehicle. The driver of the defendant automobile blew his horn and applied his brakes but to no avail. The plaintiff car was struck in the left rear by the front of the defendant automobile just before, or just after, the former vehicle had completed its intended crossing of the inner southbound lane.
The testimony is in conflict on the issue of visibility and weather conditions prevailing at the time of the accident, the crucial point in this case. Mr. and Mrs. Twickler testified there was only a light drizzle and visibility was good; it began to rain heavily, and became darker, shortly after the accident happened. Mrs. Ward and Mrs. Corona testified that at the time the accident happened it was storming, there was an extremely heavy rainfall with thunder and lightning, and in consequence it was dark and visibility was extremely limited. These two ladies further testified that the approaching vehicular headlights they saw in the southbound lanes of Causeway while their car was stopped in the neutral ground portion of the intersection (Mrs. Ward saw two lights while Mrs. Corona saw four) were so obscured by the darkness and rain that the lights looked like "stars”, the lights alone were visible, and they, the two witnesses, were unable to see the approaching car (or cars) ; they were able to see only the headlights. The record contains a U.S. Naval Observatory Certificate to the effect that sunset occurred at 7 p. m. on the day of the accident.
The present pertinent law on the subject of headlights, LSA-R.S. 32:301, did not become effective until August 1, 1962. The law in effect on the date of the accident in the instant case was LSA-R.S. 32:-290, which reads as follows:
“Every vehicle operated upon a public highway in this State between one half hour after sunset and one half hour before sunrise, or at any other time when there is not sufficient light to render clearly discernible any person on the highway for a distance of two hundred feet ahead, shall be equipped with lighted front and rear lamps as required by this chapter for the different classes of vehicles, subject to the exemptions and conditions hereinafter prescribed.” LSA-R.S. 32:290.
Since the record establishes that the accident happened shortly before 7 p. m. on a day when sunset occurred at 7 p. m., it is clear that the first provision of the above quoted statute, requiring the use of lighted front and rear lamps one half hour after sunset, is not applicable. The first question before us involves the second phrase of the statute. Was the light insufficient "to render clearly discernible any person on the highway for a distance of two hundred feet ahead”, thus placing the *133 driver of the defendant car under the statutory requirement of having his headlights on? In addition, if that question is answered in the affirmative, did the absence of lighted headlights on the defendant car prevent the plaintiff driver, even by the exercise of the extreme care required of a motorist attempting to make a U-turn under adverse weather conditions which impaired visibility, from seeing the approaching defendant vehicle?
Defense counsel argues that plaintiffs have failed to produce the best evidence available to prove their claim; that they should have offered expert testimony relative to the prevailing weather and atmospheric conditions. However, counsel has not pointed out the type of evidence to which he refers and we know of none available to plaintiffs. Weather maps, even as analyzed by an expert, hardly could be expected to show the degree and extent of rainfall and visibility at any given point at a given time, especially in connection with a rain which, as in the instant case, began falling heavily either very shortly before or very shortly after the collision took place. It appears to us that no one is better able to tell the extent of visibility or of the intensity of a rainfall at any given point at any given time than a person who is at that point at that time.
As shown by his “Reasons for Judgment”, on these points the trial judge believed the testimony of plaintiff’s two witnesses and did not believe the testimony of the defendant’s two witnesses. He found it was raining heavily and the visibility was poor, sufficiently poor as to place the defendant driver under the statutory requirement of turning on his headlights and as to prevent the plaintiff driver from seeing the oncoming unlighted defendant automobile, even by the exercise of the care required of her. He concluded that the sole proximate cause of the accident was the negligence of the defendant driver in not having his headlights on, in proceeding at a speed of 35 miles per hour under the prevailing weather conditions and in failing to keep his vehicle under proper control.
We note that here there is no question as to whether or not it was raining; all of the witnesses agree on that fact. And even the defense witnesses testified that almost immediately after the accident (their testimony was to the effect that after the two automobiles came to a stop following the collision Mrs. Ward walked over to their car, got in that car because of the rain and had to remain there because of the heavy downpour) it was raining so hard they couldn’t leave their car; they remained therein for approximately one hour after the collision, turning the headlights on and off in an unsuccessful attempt to attract attention and obtain assistance.
 In view of the contradictory testimony, the question of what the weather conditions and visibility were at the time of the accident is simply a question of fact involving the credibility of the witnesses. On such a question the trial judge will be reversed only for manifest error. See Liddell v. New Orleans Public Service, Inc., La.App., 128 So.2d 80; See also 2A La.Dig. Appeal & Error, <®:=’1008(1). In the instant case we are unable to say that this important finding'of fact by the trial judge is clearly erroneous. And, accepting the facts as found by the trial court, we agree with his conclusion that the accident was caused by the negligence of the defendant driver and that the plaintiff driver was not negligent.
On the question of quantum, the record reveals that Mrs. Ward’s injuries consisted of a moderately severe strain of her neck and back muscles and joints. On June 15, 1962 she saw a chiropractor who treated her on thirty-one occasions until September 21, 1964. Her complaints were of low back pain, shoulder pain, and numb sensations in finger areas accompanied by neck pain and headaches. Chiropractic treatment consisted of manipulations of the spine. On August 3, 1962 she saw Dr. Byron M. Unkauf, an orthopedic specialist, *134 who treated her from that date to March 26, 1965. His treatment involved heat, cervical traction and medication. Because of persistent complaints and her considerable anxiety, this doctor placed Mrs. Ward in a hospital in traction from November 9, 1962 to November 21 of the same year. She improved considerably and was advised to continue neck traction daily at home, which she did over a long- period of time. Dr. Unkauf found she had a consistent history of sixth cervical root irritation with some difficulty at the fifth cervical root which fluctuated. He was of the opinion that Mrs. Ward had recovered from her lower lumbar back strain on September 25, 1964 but at that time continued to have some residual disability with her neck. When last seen on March 26, 1965 his examination of the neck revealed quite audible creaking on rotation of the neck, with limited range and some pain on the extremes, bilateral trapezius tenderness and some parascapular tenderness of the fifth and sixth cervical roots. He felt her condition was aggravated by hypertension and anxiety and, while he disapproved of the chiropractic treatment, he did not feel it had aggravated her condition. Dr. Unkauf also felt that because of the persistent complaints over such a long period of time a myelogram should be made to determine whether or not Mrs. Ward had a ruptured cervical disc requiring operative procedures.
Dr. Irving Redler, orthopedic specialist, examined plaintiff for defendant on one occasion on April 12, 1965. At that time he found no evidence of residual disability affecting the cervical and thoracic and lumbosacral portion of the lumbosacral spine. He did find a slight narrowing of the intervertebral disc spaces between C-6 and C-7 vertebrae with small osteophytes between C-6 and C-7 which he believed to be of long standing.
Dr. Richard W. Levy, an expei't in the field of neuro surgery, also testified for defendant. He X-rayed plaintiff and found no abnormality of neuro surgical significance or any disability from a neurological standpoint. The doctor stated there might have been slight narrowing at the C-6 and C-7 interspaces but in the absence of complaints of pain radiating in either arm he attached no neurological significance to this slight narrowing. He examined plaintiff on one occasion in April, 1965. She did complain of neck pain at that time when she turned her head quickly to either side. He found no evidence of a ruptured disc, and stated that diagnosis and treatment for this difficulty would fall solely within the field of his specialty.
Defendant contends that much of Mrs. Ward’s physical disability was due to hypertension, headaches and anxiety unrelated to the accident. We are satisfied from all of the medical testimony that these conditions did aggravate the strain of the neck and back muscles incurred as a result of the collision. But this fact does not lessen the amount of damages to which she is entitled.
We are satisfied, as was the trial judge, that Mrs. Ward has suffered pain, at times severe and at other times moderate, over a period of more than three years and that her house work and other endeavors have been sharply curtailed thereby. At the time of the trial in April of 1965 she was still experiencing pain and discomfort. Under the holdings of Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, we are of the opinion that the $7,500 award does not abuse the discretion vested in the trial court.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.