SARTAIN, Judge.
This is an action for damages and personal injuries that resulted from an accident which occurred on February 8, 1964 in Ponchatoula, Louisiana.
The plaintiffs are Mrs. Martha Reno Berry and her husband Foster C. Berry. Mrs. Berry seeks damages for personal injuries to herself. Mr. Berry seeks recovery for special damages incurred by him individually, and as administrator of the estate of his minor son, Wesley H. Berry, for injuries sustained by the boy.
The defendant is the public liability insurer of the McKneely Funeral Home, Inc., the employer of Robert Richard, who was driving a 1958 Chevrolet pick-up truck when it collided with a 1962 Ford Falcon automobile owned by Mr. Berry and driven at the time by his wife.
The trial judge found that the accident was the sole result of the fault of Robert Richard and rendered judgment in favor of Mrs. Berry in the amount of $2,500.00; in favor of Mr. Berry, individually, in the amount of $750.00, and Mr. Berry as administrator of the estate of his minor son, Wesley H. Berry, in the sum of $1,000.00. Defendant has appealed suspensively from this judgment.
There is really no dispute concerning the facts which caused the accident. It was between two vehicles which were in the process of backing up at the time of the collision. The accident occurred shortly after noon on ’North Seventh Street, just off of West Pine Street in Ponchatoula. West Pine Street runs in an east-west direction. North Seventh Street runs in a north-south direction. There is a traffic light at the intersection of these two streets. On the northwest corner of the intersection is a Catholic church and in front of the church there is a parking area sufficient in width to permit vehicles to park perpendicular to and completely off of the street. On the northeast corner of the intersection is an A & P Supermarket. Between the store and North Seventh Street there is also an area for off street parking.
Mrs. Berry testified that she parked in a perpendicular fashion in front of the Catholic church for the purpose of going to A & P to shop. After completing her shopping, she desired to back out onto North Seventh Street, then turn to her left and proceed south on North Seventh Street. She stated that just before she backed out she looked to her right (north) on North Seventh Street and observed the approach of defendant’s pick-up truck which was traveling south on North Seventh Street. She waited for the truck to pass and then seeing no other traffic approaching from the north or pedestrians to her rear, she proceeded to back out of her parking space. She had only gone several feet when she was struck by the pick-up truck that had just passed her.
Robert Richard, the driver of the pickup truck, stated that he was traveling south on North Seventh Street and was on his way back to his place of employment. He explained that as he approached the intersection of West Pine and North Seventh Streets, the light turned red and he stopped. It was then that he remembered a request of his employer to pick up a pack of cigarettes. He looked to his left rear and observed that there was a vacant parking place on the east side of North Seventh Street next to the A & P store. He began to back up with the intention of' backing into the vacant parking place. He stated that he had only moved a short distance when he felt the impact of his vehicle with the Berry vehicle. Richard did not recall seeing Mrs. Berry at any time prior to the collision. He testified that he was looking through his left *487 rear view mirror and observed no traffic to his rear. His right rear view mirror had been broken sometime before. Thus, it is clear that he had no way to observe Mrs. Berry as she proceeded to leave her parking space to his right rear.
The police officer who investigated the incident testified that the accident occurred in the southbound lane of traffic or the west side of North Seventh Street at a point approximately forty feet from its intersection with West Pine Street.
Mr. Harry McKneely testified that he arrived at the scene of the accident before the police officer. He observed that the right rear of the pick-up truck was still in contact with the left center of the Falcon. He also placed the point of impact in the southbound lane of North Seventh Street at approximately thirty steps from its intersection with West Pine. He stated that the Falcon was stopped at an angle of 45° to the street with its front wheels still on the parking surface and its rear wheels on the street itself.
The record does not contain oral or written reasons of the trial judge. However, we agree with his decision which cast the defendant alone and rejected its plea of contributory negligence on the part of Mrs. Berry.
In brief and in oral argument before us defendant admits to the negligence on the part of Robert Richard which consisted of the latter’s backing the pick-up truck in the southbound lane of North Seventh Street in a northerly direction without the aid of a right rear view mirror. Defendant, nevertheless, strenuously urges that Mrs. Berry was guilty of negligence which contributed to the accident in that she proceeded to back out onto North Seventh Street without proper precaution and failed to see that which she should have seen, the pick-up truck. We, like the trial judge, must reject this argument because we do not find that Mrs. Berry acted in an imprudent or unreasonable manner. Her testimony is very clear that she got in her vehicle, she looked to her right and saw the pick-up truck, she waited for it to pass, and then seeing no other obstacle in her way, she proceeded to back up. She had every reason to expect that the pick-up truck having passed her and come to a halt at the red light, just a short distance from her, would remain at the red light until it changed and then proceed on. She certainly had no reason to expect that the driver of the pick-up truck would suddenly proceed to back up towards her. At no time did Mrs. Berry enter or in any way block the proper northbound lane of traffic on North Seventh Street nor do any other act which could be deemed a contributing factor to the accident.
We now turn our attention to the various awards made by the trial judge. Mrs. Berry stated that although the accident happened on February 8, 1964 she did not go to a physician until February 17, 1964. She stated that her reason for delaying was that she had hoped that either her discomfort would ease or that she would have an opportunity to go to Camp Leroy Johnson in New Orleans and receive medical attention from the military hospital. Her husband was in the army and overseas at the time. When her condition did not improve she saw Dr. A. J. Feder of Hammond, Louisiana. Dr. Feder stated that his initial examination revealed a large ecchy-motic area of extravasated blood into the tissues of the left hip which he felt was compatible with the injury she suffered nine days previously. He found that the left leg was tender but Mrs. Berry had good knee motion. Because of back complaints he had X-rays made for a possible fracture or dislocation. The X-rays proved to be negative. His diagnosis was that Mrs. Berry “incurred an acute lumbosacral strain, a contusion of the left hip and a contusion of the left leg with a hematoma of the anterior ileum region due to the contusion.” He stated that he treated her with physiotherapy, muscle relaxants and pain relievers and that Mrs. Berry slowly but steadily improved. By March 20, her symptoms *488 were such that he felt she was a great deal better. Examination revealed some limitation of motion but no muscle spasms. He told her to discontinue medication and to endeavor to do her regular work around the house but to return to him if her condition worsened. He again saw her on March 23 and determined that her activities had caused the return of back and leg discomfort. He referred her to a radiologist in Baton Rouge for X-rays. These X-rays proved negative insofar as the accident was concerned. He stated that he continued to treat her until May 26 at which time he found no objective findings. Mrs. Berry admitted then that she was doing well and the doctor therefore discharged her and assumed that she had made complete recovery. From the period of February 17 until May 26, 1964, Dr. Fader had seen and either examined or treated Mrs. Berry on forty-four occasions. His treatment consisted primarily of physiotherapy and medication. He stated that Mrs. Berry seemed sincere and honest and responded well to his treatment.
At the request of defendant, Mrs. Berry was examined by Dr. E. J. Daly, an orthopedic specialist, on March 14, 1964. Dr. Daly’s testimony was taken by deposition. He deposed that on the date of his examination he examined Mrs. Berry, thoroughly, having her undergo numerous orthopedic tests, and determined that her complaints were purely subjective and that she had in fact recovered from any injuries she may have sustained on February 8, 1964 as a result of the accident.
The trial judge awarded Mrs. Berry $2,500.00 for her physical injuries. Under the facts enumerated above we do not find that this award is excessive as urged by defendant nor that the trial judge abused his discretion in awarding this sum. While Dr.' Daly’s testimony might at first appear to be at odds with that of Dr. Feder, a closer examination reveals that on March 20, Dr. Feder also found Mrs. Berry’s condition much improved and directed that she attempt to perform her regular duties around the house. Apparently this was premature because on the 23rd of March, it was necessary that her medication and conservative treatment be resumed.
The trial judge awarded Mr. Berry, as the administrator of the estate of his minor son, Wesley H. Berry, the sum of $1.000.00 for injuries sustained by young Berry. We agree with counsel for defendant that the trial judge did in fact abuse his discretion in making an award in this amount for the relatively minor injuries that the child received. Young Berry was seen by Dr. Feder on February 18. The doctor stated that the boy was apparently not in distress and the motion of his back was normal. Though the child complained of pain or palpitation of the back there was no muscle spasms. He did observe a small abrasion cut on the youth’s left hip which was healed. He saw the child again the next day and was informed by Mrs. Berry that the medicine he had prescribed the previous day was “doing all right.” He, therefore, discharged the boy. Under these circumstances we feel that the award of $200.00 is an adequate sum.
The trial judge awarded Mr. Berry the sum of $750.00 as special damages. The record reflects the following special damages incurred by Mr. Berry: $196.03 for damages to his vehicle; $369.00 to Dr. Feder for his wife; $22.00 for drugs for his wife; $25.00 to Dr. Feder for his son; and $35.00 to Drs. Malen and Woolfolk for X-rays for his wife, for a total of $647.03. The award of $750.00 to Mr. Berry should be reduced to the sum of $647.03.
Accordingly, for the above and foregoing reasons the judgment of the district court awarding Mrs. Berry $2,500.00 for personal injuries sustained by her is affirmed; the award to Mr. Berry of the sum of $1,000.00 as the administrator of the estate of his minor son for injuries sustained by the minor in the amount of $1,000.00 is amended and as amended reduced to the sum of $200.00; *489 and the award to Mr. Berry of $750.00 for special damages is amended and as amended is reduced to the sum of $647.03; all sums to bear legal interest thereon from date of judicial demand until paid. Appellant is also cast for costs.
Amended and affirmed.