SAMUEL, Judge.
This is a suit for personal injuries incurred in an automobile accident. Plaintiff was a guest passenger in an automobile driven by her husband. Defendants are Fireman’s Fund Insurance Company, liability insurer of the vehicle in which plaintiff was a passenger, and State Farm Mutual Automobile Insurance Company, liability insurer of the other vehicle involved. The matter was tried to a jury. The judgment, which was rendered in accordance with the jury’s verdict, is in favor of plaintiff and against State Farm in the sum of $7,500 and in favor of Fireman’s and against the plaintiff, dismissing her suit as to that defendant. After filing a motion for a new trial, or alternatively a remittitur, both of which were denied, State Farm appealed therefrom. In this court appellant concedes liability and contends only that the $7,500 award for personal injuries is excessive. As plaintiff has neither appealed nor answered the appeal, that is the sole question presented for our determination.
The accident, a head-on collision, occurred in the City of New Orleans on September 10, 1965. At that time plaintiff was 29 years of age and resided with her husband in Miami, Florida. She was a diabetic, usually taking 38-40 NPH-40 insulin a day, and had a congenital back abnormality described by the medical experts as an incompletely sacralized transverse process on the right side of the 5th lumbar vertebra.
Evidence in the record concerning the injuries consists of the testimony of plaintiff, her husband (who only corroborated some of his wife’s testimony) and Dr. Irving Redler, a local orthopedic surgeon who examined plaintiff first at the request of appellant and later at plaintiff’s request; the deposition of Dr. C. A. Zarzecki, an orthopedic surgeon of Miami, who treated plaintiff following the accident; and the medical reports of Dr. Janice M. Burr, an internist, also of Miami and a treating physician, and Dr. H. R. Soboloff, a local *10 orthopedic surgeon who examined plaintiff at her request.
Relative to her personal injuries, plaintiff’s testimony was as follows: She had been sitting in the front seat next to the driver and was wearing a seat belt. The collision threw her forward and her face struck the windshield. She was taken to Touro Infirmary where x-rays were made. There she complained of injuries to her head and nose and pain in the back of her neck. She was given a muscle relaxant for pain and instructed to consult her own physician upon her return home. Upon returning to Miami she was unable to see her regular physician, Dr. Burr, until after the intervening weekend. She saw that doctor two days later, remaining in bed during the interval. At that time she had back and neck pain, her head and nose were black and blue as a result of striking the windshield, and she had a black and blue mark across her abdomen from the seat belt. Her diabetic condition had been knocked out of control as a result of the accident and she was required to take extra insulin. Dr. Burr prescribed medication for the pain in the back of her neck and later recommended that she see Dr. Zarzecki, the orthopedic specialist.
Dr. Zarzecki recommended exercises at home and physiotherapy in his office, which she received on six occasions. When these proved ineffective electrical wave massage was administered. Her head injuries gradually subsided but her lower back commenced to pain her and that pain has continued. Prior to the accident she had exercised strenuously, frequently swimming, riding horseback and dancing, important and necessary functions because of her diabetic condition. At the time of trial, slightly more. than two and one-half years after the accident, she was still unable to take these exercises except to a very limited extent.
She had injured her back after a sneezing episode in 1963. At that time she restricted her activities for three months, then experienced a dull ache and later only an awareness. The effects of that prior injury had disappeared four or five months before the occurrence of the accident in suit. She continues to complain of uncomfortable back aches. Her discomfort is less now and she has improved, but not to the extent that she can resume all of her activities. She missed only three days work following the accident and her neck troubled her for only about one month. After that time all of her complaints have been concerned with the low back pain.
Dr. Burr’s medical report indicates she saw plaintiff on September 13, 1965 (three days after the accident) at which time Mrs. Collier complained of pain in the back of the neck as a result of the automobile accident. Plaintiff was a diabetic patient and additional insulin was necessary while the diabetic status was altered by pain. In addition to the effect on the diabetes, Dr. Burr diagnosed plaintiff’s injuries as mild contusion of the face and cervical sprain. The report is silent as to any complaints relative to the back.
The deposition of Dr. C. A. Zarzecki indicates he saw plaintiff for the first time on October 13, 1965 slightly more than one month after the accident. A history was taken and an orthopedic examination performed. Mrs. Collier complained of general intermittent headaches and pain in the neck on extension and side-to-side rotation and stiffness and discomfort in the back while standing, similar to a back spasm she had experienced after the sneezing episode. The doctor found bruises on her nose and right eyebrow. Pressure on her head made her uncomfortable. There was localized pain in the neck and low in the back pos-teriorally. There was muscle spasm in the sternocleidomastoid from the mastoid to the sternum. Forward bending was 25% limited at the C-7 area; backward bending was 75% limited with pain at the site; right and left rotations were 50% limited with pain. X-rays of the cervical spine and lumbosacral region were made. In the former, forward flexion view, there was a tendency toward straightening, confirming *11 her complaints in the neck region. X-rays of the back were normal except for the congenital butterfly transverse process on the right.
Treatment consisted of back exercises, restriction of strenuous activities and physiotherapy in the form of heat and massage to the neck and back. She received six treatments from October 14, 1965 to November 5, 1965. Dr. Zarzecki’s diagnosis at the conclusion of her initial examination was contusion to the facial region, cervical strain and lumbosacral strain. He explained manifestation of the latter strain some time after the occurrence of the accident was not unusual.
Plaintiff was next seen on October 27, 1965 complaining of only temporary improvement on physiotherapy. She had 25% limitation of forward and backward extension of the neck, and no limitation in left and right rotation. The back was localized to the upper dorsal and lumbosacral level. Forward bending was 25% limited, with 50% limitation of bending in the low back; right and left bending were complete. Physiotherapy was changed to electrical stimulation to the neck and back and plaintiff was placed on medicines and cervical and back exercises. In this doctor’s opinion the cervical and lumbosacral strains were due to, and plaintiff’s congenital back condition was aggravated by, the automobile accident.
She was seen October 10, 1966, one year later, at which time she complained of posterior discomfort on extension of the neck and constant soreness in the low back region. There was some improvement since the previous examination. Neck motions were complete and without pain or tenderness. As to the back, on October 16, 1966, backward bending was 25% limited, with pain at the site. Plaintiff had only minimal symptoms at the cervical level, but continued to complain of difficulty at the lumbosacral level; the latter strain had now become chronic. The doctor advised continued back exercises and felt that if the low back symptoms persisted for a year a lumbosacral fusion (i. e., surgical bone graft) probably was indicated. He was of the opinion the back condition was permanent, that plaintiff had some permanent partial disability (in addition to the congenital condition) of the body as a whole, and that the accident was the cause of this disability, principally because three months before the accident plaintiff had been free of all symptoms resulting from her prior back injury brought on by the sneezing episode in 1963.
Dr. Irving M. Redler testified he first saw plaintiff on October 17, 1966 when a history was taken and an orthopedic examination was performed. Plaintiff complained of a dull pain in the lumbosacral region which was aggravated by sitting or standing for too long a time. She complained of pain in the region of her fifth lumbar vertebrae when pressed in this area. No examination of the neck was made because there were no complaints in that area. X-rays on this date showed the congenital abnormality.
On April 28, 1968, one day before the trial began, Dr. Redler examined plaintiff for the second time. This examination revealed no further abnormality. X-rays of the back showed no change from the previous x-rays. The doctor stated the congenital abnormality alone could produce, and he was of the opinion it was the cause of, the pain in the low back area; but he also stated the accident could have aggravated the congenital condition and the fact that plaintiff did not complain of a low back pain until a month after the accident was of no significance with regard to whether or not that pain was caused by the accident. He was of the opinion plaintiff should use a back support which use probably would afford complete relief from the low back pain. However, he also felt that failure to obtain relief from the use of a back support would indicate the necessity of resorting to a spinal fusion operation.
Dr. Soboloff saw plaintiff on one occasion, thirteen months after the accident. An orthopedic examination was performed *12 and x-rays were made with identical findings when compared with previous x-rays of July 25, 1962, October, 1965 and October, 1966. At that time plaintiff complained only of a constant low lumbosacral ache. From an objective orthopedic standpoint the clinical examination was negative. Dr. Soboloff could find no aggravation of the pre-existing congenital abnormality and there were only plaintiff’s subjective complaints.
We find that plaintiff’s injuries resulting from the accident in suit consisted of contusions of the face, a cervical sprain and a lumbosacral sprain. The facial contusions were evident at least one month after the accident. Plaintiff received treatment until November, 1965 for the neck and back. The record does not establish the length of time she had added difficulty controlling the diabetes. One year later her treating physician found minimal symptoms at the cervical level, but the low back difficulty remained.
In addition, we are satisfied the trial jury accepted Dr. Zarzecki’s testimony to the effect that the accident caused plaintiff’s persistent low back pain by aggravating her pre-existing congenital back condition. There is .sufficient evidence in the record to support such a finding. The only other medical evidence pertinent to the question is contained in the testimony of Dr. Redler and the report of Dr. Sobol-off. While Dr. Redler felt the low back pain could be, and was, caused solely by the congenital condition, he also felt that condition could have been aggravated by the accident. Dr. Soboloff’s report simply states he could find no aggravation of the congenital abnormality; but the report fails to state whether or not the accident could have aggravated the condition in the absence of objective findings. As Dr. So-boloff did not appear as a witness, he was not examined regarding that question. We note that all of the three doctors were orthopedic specialists and, of the three, Dr. Zarzecki was the only treating physician.
Thus, on the basis of the jury’s finding, the low back pain which has persisted for more than two and one-half years, the necessity of apparent permanent use of a back support as recommended by Dr. Re-dler, and the possible necessity of a spinal fusion operation according to both Dr. Zarzecki and Dr. Redler are attributable to the accident.
With regard to quantum for personal injuries each case must be decided largely on the facts and circumstances surrounding the particular injuries involved and amounts of awards in similar cases are relevant for the exclusive purpose of determining whether the award is so excessive or so inadequate as to constitute an abuse of the “much discretion” vested in the trial judge or jury under LSA-C.C. Art. 1934 (3). Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127.
In this connection we have examined other cases involving somewhat similar injuries. These cases include: Fish v. Martin, La.App., 201 So.2d 341; Plaisance v. Maryland Casualty Co., La.App., 169 So.2d 695; Fowler v. F. W. Woolworth Co., La. App., 169 So.2d 754; Ward v. State Farm Mut. Auto. Ins. Co., La.App., 182 So.2d 130; DeGregory v. State Through Dept. of Hwys., La.App., 192 So.2d 834.
Our conclusion is that the award of $7,-500 is not so excessive as to constitute an abuse of the “much discretion” vested in the trial jury.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.