SAMUEL, Judge.
These two suits for personal injuries arise out of a collision between a garbage truck owned by Jefferson Disposal Company, Inc. and an automobile. Plaintiff in one of the suits is the truck driver, Lester Van Norman. Van Norman’s co-worker and passenger in the truck at the time of the accident, Damon Wright, Jr., is the plaintiff in the other suit. Both were employed by Jefferson Disposal and the accident happened in the course and scope of their employment.
Named defendant in both suits under the uninsured motorist provision of its policy *831 is Highlands Insurance Company, insurer of the Jefferson Disposal truck. Defendant answered both suits in the form of a general denial and alternatively pleaded contributory negligence. In each suit it also filed a third party petition against Mrs. Joyce S. Spindler and Vincent J. Troia, respectively the driver and the owner of the automobile involved in the accident.
The cases were consolidated for trial in the district court and for argument here. Following trial, judgment was rendered in the Wright suit in favor of that plaintiff and against Highlands in the sum of $350 and, on the third party demand, in the same amount in favor of Highlands and against Mrs. Spindler; in the Van Norman suit judgment was rendered in favor of that plaintiff and against Highlands in the sum of $500. No judgment was rendered on the third party demand in the Van Norman suit because, it appears, the third party petition had been misplaced and was not in the record at the time of rendition of judgment. In both suits there was further judgment in favor of Troia, owner of the automobile, dismissing the third party demands as to that third party defendant.
Both plaintiffs have appealed seeking an increase in quantum. Highlands has answered the appeal seeking reversal of the trial court’s judgment on the matter of liability and, alternatively, a reduction in quantum. The appellee makes no complaint concerning the dismissals of its third party demands against Troia and those dismissals are not before this court.
The accident occurred January 29, 1970 at about 10 p. m. on Airline Highway (U. S. Highway 101) in St. Charles Parish a short distance west of the City of Kenner. It was a particularly dark night and there were no street lights in the vicinity. Both vehicles were traveling towards Baton Rouge and the truck was struck in the rear by the automobile. Five witnesses testified regarding the facts of the accident, two on behalf of plaintiff and three for the defendant.
Plaintiffs’ version of the accident is that the truck was returning to a dump which is located to the right of that portion of the highway reserved for vehicles traveling towards Baton Rouge. The driver, Van Norman, testified he was traveling in the extreme right lane at a speed of 30 to 35 miles per hour. As he approached the road leading to the dump he slowed to 10 or 15 miles per hour, put on his turn signal when he was 300 feet to 500 feet away from the side road, and was struck from behind by the defendant automobile just prior to making the right turn. Both plaintiffs were sure the truck’s rear lights were burning at the time of the accident because, as was their custom, they had checked the vehicle that afternoon prior to starting their route and all of the lights were in working order when checked. Plaintiff Wright, who had been seated next to the driver, was unable to testify relative to the facts immediately prior to and at the time of the collision because he had been asleep and was awakened by the impact.
Defendant’s version of the accident is that the automobile driver was confronted by a sudden emergency when the truck, traveling at a fast rate of speed, suddenly reduced its speed to, or almost to, a stop. Mrs. Spindler, driver of the automobile, testified she was traveling 50 miles per hour and did not see the truck until it was only 20 feet in front of her in a stopped position. At that time she applied her brakes but was unable to avoid the accident. She further testified she saw no lights on the truck, no indication it would turn, nor any signs indicating a side road or dump area.
The other two fact witnesses for the defendant were a Mr. George A. Pence and his wife who were traveling west in their automobile in the left lane of that portion of the highway reserved for traffic proceeding towards Baton Rouge. Mr. Pence stated a car was ahead of him in the left lane and the defendant automobile was ahead of him in the right lane. The truck, *832 which he did not notice until it was on the other side of an overpass, appeared to be going 45 to 55 miles per hour and then stopped, or appeared to be stopping, rapidly. He saw lights on the rear of the truck but he saw nothing to indicate it would turn. He said the defendant driver could not have swerved to her left because of the other traffic in that lane. Of further interest is the fact that Mr. Pence was of the opinion that the defendant automobile was approximately 50 feet or less behind the truck when the truck began slowing down. Mrs. Pence’s testimony essentially is similar to that of her husband. She did see lights on the truck but did not see a turn signal. Thus both independent defendant witnesses were of the opinion the truck suddenly stopped or suddenly slowed to almost a stop.
 The trial court concluded the sole proximate cause of the accident was the negligence of the driver of the automobile in failing to keep a proper lookout. Obviously, in reaching this conclusion he accepted the testimony of the truck driver over that given by Mr. and Mrs. Pence,[1] for the testimony of the latter two witnesses, if accepted, would establish negligence on the part of the truck driver. If we had heard the case in the trial court it is quite possible we would have found such negligence relying on the testimony of Mr. and Mrs. Pence. However, this is a matter peculiarly within the province of the trial court. In such matters, conclusions of fact based on the credibility of witnesses heard and seen by the trial judge are reversible only for manifest error. Here we find no manifest error was committed by the trial court simply in accepting the testimony of the truck driver as opposed to accepting the testimony of the two defendant factual witnesses.
The evidence relative to quantum consists of the testimony of plaintiffs themselves and the medical reports of Drs. Julius Levy, Jr., Van Norman’s physician, and F. J. Padua, Wright’s physician, relative to examination and treatment of their respective patients. The reports were submitted by stipulation.
Van Norman testified his knee hit the dashboard at the time of the collision. His knee was swollen and his back bothered him. He treated himself that evening with Epsom salt and heat. The next day, and on numerous times thereafter, he asked his dispatcher and his supervisor to send him to the company doctor because he could not afford to pay a physician; but there was a lot of work to be done and they kept putting him off. He tried to work but finally had to stop, primarily because of difficulty with his knee. He went to Dr. Levy when he made no progress. He returned to work when the doctor recommended it but at that time was able to work only for about two days. The knee gave him more trouble than the back; the former continued to swell even after his discharge on May 7, 1970.
The medical report of Dr. Julius Levy, Jr. indicates he first saw Van Norman on March 4, 1970. Examination on this date revealed fluid in the right prepatella bursa of the right knee with tenderness and cre-pitation on manipulation of the patella and limited mobility. Lumbosacral examination revealed tenderness with limitation of motion of the lumbosacral spine because of pain and difficulty reassuming the upward position after forward flexion. X-rays showed minimal arthritic changes of the medial aspect of the right knee and straightening of the normal lordotic curve with some narrowing of L-4 and H-5 in-tervertebral disc space. The patient was *833 placed on muscle relaxants, analgesics and microtherm therapy three times weekly. By May 7, 1970 the knee had returned to normal with evidence of swelling and the back was negative for objective findings.
In Dr. Levy’s opinion Van Norman sustained a traumatic bursal injury in the pre-patella bursa and a flexion extension injury of the lumbosacral spine as a result of the accident. He felt there would be no permanent residual disability although complaints might persist for an additional six months from the date of the doctor’s report (May 12, 1970). Dr. Levy saw Van Norman on eight office visits through May 7, 1970 and there were an additional twenty-eight visits for microtherm treatments to the knee and back. The doctor’s charges amounted to $410.
Wright, the passenger, testified he awoke following the impact when his knee hit the dashboard and his neck “snapped”. The next day and the day following he asked his employers to send him to the company doctor but they were very busy and he was not sent. Work records established Wright worked for two weeks after the accident without missing a day. He missed seven days of work intermittently thereafter until his termination on March 27, 1970.
Dr. F. J. Padua’s report indicates he first saw Wright on March 6, 1970. At that time he complained of pain in the neck and back. Examination revealed tenderness to palpation over the posterior cervical musculature and an area over the anterior thigh. The doctor diagnosed the injuries as cervical strain and contusion of the left thigh. He was advised to use moist heat at home. Diathermy and ultrasound with massage were administered at the office. Wright was seen on March 6 and 10, and on April 1. On the last date no objective findings were evident although he complained of stiffness. Dr. Padua’s bill for services was $67.
The trial court was impressed by the fact that both Van Norman and Wright actually missed very little time from work following the accident and before the termination of their employment and by the fact that neither obtained medical attention until some five weeks after their injuries were incurred. However, the record, and particularly the reports of the respective physicians, satisfies us that the work was performed with considerable difficulty and pain and that the injuries were not feigned.
Keeping in mind that each case must be decided on the facts and circumstances surrounding the particular .injuries involved and that awards in similar cases are relevant only for the purpose of determining whether the awards are so excessive or so inadequate as to constitute an abuse of the “much discretion” vested in the trial judge or jury by LSA-C.C. Art. 1934(3) we have examined other cases involving injuries somewhat similar to those suffered by the present plaintiffs. These cases include LaDousa v. Johnson, La.App., 250 So.2d 158; Nichols v. Weimer, La.App., 238 So.2d 770; Dugas v. Achord, La.App., 238 So.2d 761; Berry v. Fidelity & Casualty Company of New York, La.App., 223 So.2d 485 and Paternostro v. Travelers Insurance Company, La.App., 176 So.2d 165.
 We conclude that the award of $350 to Wright, including as it does Dr. Padua’s bill of $67, and the $500 award to Van Norman, which includes Dr. Levy’s bill in the amount of $410, are so inadequate as to constitute an abuse of the “much discretion” vested in the trial court. Accordingly the awards will be increased to the sum of $600, plus special damages of $67, for Wright and to the sum of $2,500, plus special damages of $410, for Van Norman.
For the reasons assigned, the judgment in the matter entitled “Damon Wright, Jr. v. Highlands Insurance Company”, No. 128, 145 of the docket of the trial court, is amended to increase the award to plaintiff from the sum of $350 to the sum of $667 *834 and the judgment in the matter entitled “Lester Van Norman v. Highlands Insurance Company”, No. 128, 185 of the docket of the trial court, is amended to increase the award to that plaintiff from the sum of $500 to the sum of $2,910. As thus amended, and in all other respects, the judgments appealed from are affirmed; costs in this court to be paid by the defendant-appellee, Highlands Insurance Company.
Amended and affirmed.

. Since Mrs. Spindler, by her own testimony first saw the truck when she was only 20 feet away from that vehicle (50 feet or less according to Mr. Pence) and while she was traveling 50 miles per hour, she could not have observed the truck’s speed or lack thereof, and her testimony regarding the actions of the truck are not reliable.