277 So.2d 188 (1973)
Henry ODOM
v.
Velis C. SANDERS et al.
No. 5244.
Court of Appeal of Louisiana, Fourth Circuit.
May 1, 1973.
Morphy, Freeman, Holbrook & Faulkner, Steven K. Faulkner, Jr., New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, New Orleans, for defendants-appellees.
Before REGAN, SAMUEL and BOUTALL, JJ.
SAMUEL, Judge.
This is a suit for damages for personal injuries sustained in an automobile accident. The defendants are the driver of the other vehicle involved, his employer and its liability insurer. Following trial on the *189 merits there was judgment in favor of plaintiff in the sums of $1,500 for pain and suffering and $213.20 for special damages. Plaintiff has appealed. In this court he seeks an increase in the $1,500 award for pain and suffering. That is the only issue before us.
The evidence consists of the testimony of plaintiff, his wife and his son and stipulated documents which include hospital records, the deposition of Dr. Stuart Phillips and the medical report of Dr. Alvin Cotlar. No evidence was presented on behalf of the defendants.
Plaintiff, 38 years of age when the accident occurred on February 16, 1970, was employed as an oil pumper. He, his wife and his son were driving to Texas in a pickup truck to bring back other members of the family who were temporarily residing in that state.
The plaintiff vehicle was stopped when it was struck from behind by the defendant two-ton truck, knocking the former forward 30 to 35 feet from the point of impact. Plaintiff was removed in a stretcher and by ambulance to a hospital where he received emergency treatment for pain in the neck and shoulder, diagnosed as midscapular strain. He was released later that afternoon. The family continued their trip the following morning with Mrs. Odom doing all of the driving.
Plaintiff testified: In Texas he consulted a family doctor who prescribed muscle relaxants. He remained in Texas about 3 days and then returned to Louisiana where he worked for 5 days before beginning a prearranged two week vacation. He spent the vacation recuperating. At the end of the two week period he resumed all of his normal duties except climbing. These duties including walking, watching heater testers, checking incoming oil, and sales. He was not required to perform physical labor as this is done by maintenance crews and heavy lifting machines. A burning sensation in the shoulder area he had experienced initially subsided after two weeks, but he still felt a tenseness that was present at the time of trial on February 4, 1972. The neck pain subsided as he gradually learned to live with the medication, but it prevented him from getting a full night's sleep. He tried to get relief by placing plywood under the mattress, changing pillows, etc.
Plaintiff was seen by Dr. Alvin M. Cotlar on January 26, 1971 because the tight, tense feeling of his right shoulder was beginning to get worse. Dr. Cotlar referred him to Dr. Stuart Phillips, an orthopedic specialist. Dr. Phillips recommended exercises and prescribed a sleeping muscle relaxant and tranquilizers. At the time of trial plaintiff complained of tenseness present at all times resembling an ache, particularly when he is worried, tired or straining in certain positions.
On cross-examination it was established that in February, 1971 plaintiff had a prostate gland operation, a bladder problem and, in 1951, an elbow operation. Prior to the accident he admitted tightness of the lower back, but not to the upper part of the back. He testified the uncomfortable feeling he experiences in his shoulder stays with him constantly and while it does not prevent him from working at his nonstrenuous labors, it does prevent him from getting proper rest. He admitted waking up at times prior to the accident because of his stomach. However he attributes his present problem to the accident because he has an aching in the area of the injuries received in the accident. He has a knot in the shoulder that works its way into his neck and gives him severe headaches. He has been taking medicine since the accident and after the prostate operation to keep down infection and help it to heal, and for bladder problems. Plaintiff's only claim herein is for the neck and cervical problems.
Mrs. Odom confirmed her husband's complaints and added that he uses heating pads, liniment and deep heat rub and hot towels which she applies and continues to *190 apply as the need arises. The need increases and decreases. The last time it was necessary was only a few days before the trial.
Dr. Cotlar's report states he saw plaintiff on January 26, 1971 for injuries received in the February 16, 1970 accident. A history revealed that although plaintiff had intermittent symptoms for three or four months after the accident, they began to increase in frequency and severity relative to his neck and between his shoulder blades with progressive increase in restriction of motion of his neck and headaches about four months previous to his examination by this doctor.
Physical examination revealed a restriction of motion on right lateral rotation to approximately 30-40 and a mild restriction on the right side. There was a mild atrophy of the muscles of the right shoulder particularly involving the right trapezius muscle and upper portion of the right deltoid. No muscle spasms were noted.
In Dr. Cotlar's opinion plaintiff sustained a severe flexion extension injury of the cervical spine as a result of the accident. The doctor was of the opinion the symptoms at the time of his examination were consistent with the injury, could continue for four to six months and should subside without permanent disability. He attributed the atrophy to disuse because of restriction of motion of the area. X-rays were taken and after reports were received thereon and plaintiff's complaints persisted, plaintiff was referred to Dr. Phillips, the orthopedic specialist.
Dr. Phillips' deposition was taken for the purpose of perpetuating his testimony. He examined plaintiff May 13, 1971 after referral by Dr. Cotlar because plaintiff had not responded to conservative care. On the date of Dr. Phillips' examination plaintiff's symptoms were on the right side of the neck and in the trapezius muscle (the large muscle at the base of the neck). The symptoms were intermittent or increased by activity, with bad weather and with anxiety. Examination revealed pain and spasm in the right trapezius and paraspinal muscles, decreased motion in the right shoulder with pain on abduction (i. e., motion away from the side of the body past 90). Examination of the cervical spine showed spasm in the right paravertebral musculature with decreased extension in left lateral deviation in motions of the cervical spine. X-rays indicated no abnormalities. Dr. Phillips diagnosed plaintiff's injury as a flexion extension of the cervical spine. In consultation with Dr. Cotlar, he recommended continuation of prior treatment of muscle relaxants, local heat and reassurance.
Dr. Phillips saw plaintiff again on August 16, 1971 and January 17, 1972. The physical findings were better, but similar in less spasm and less limited motion. Plaintiff was still on muscle relaxants, tranquilizers and local heat. The doctor indicated loss of sleep would be a normal reaction to this type of injury, and that discomfort in everyday activities, such as walking and driving an automobile, or any anxiety producing situation would cause the symptoms to get worse.
While plaintiff's condition lasted two years and was improving, the doctor was of the opinion more medicine and periodic monthly checkups were necessary and it was likely the complaints would last an additional eight months from the time of his last examination on January 17, 1972.
The doctor knew of plaintiff's elbow injury in 1951 and prostate and bladder problems, but felt they were unconnected with and could not cause the objective symptoms of muscle spasm which he found in plaintiff on each of the three occasions on which he was examined.
The trial court was impressed with plaintiff's forthright testimony and honesty. He found plaintiff was not incapacitated to the extent of losing any time from work although he was bothered by a tightening of the shoulders and in the neck, occasional headaches and cycles of pain.
*191 But he was impressed with Dr. Cotlar's "candid statement" that he found no spasms and the fact that plaintiff's complaints relative to his sleeping problems were not completely due to the injuries sustained in the accident in suit since he had other problems of the low back and stomach unassociated with the accident. Consequently, the court felt, some of the anxiety which caused the tenseness and tension may not necessarily have resulted from the accident.
While the record does establish plaintiff did not lose any salary as a result of the accident, he was required to spend two weeks of an anticipated vacation as a forced recuperative period. Furthermore, the nature of his duties were such that he was not required to perform heavy manual labor. He returned to work with symptoms of the injury still present, and working under those conditions operated as a mitigation of damages. We are satisfied, as was the trial court, that plaintiff's testimony was sincere.
While Dr. Cotlar's brief two page report indicated he found no muscle spasms at the time of his examination on January 26, 1971, nevertheless he referred plaintiff to an orthopedic surgeon who found muscle spasms on three separate occasions from May, 1971 through January, 1972. Such spasms are objective symptoms supporting plaintiff's subjective complaints of pain, and the orthopedist concluded the injury would persist for at least an additional eight months. He also found that interruption of sleep could be expected from an injury of this type.
Although plaintiff had on some occasions been unable to sleep because of his stomach, and in connection with his operation, we are impressed with the fact that his principal complaint relative to loss of sleep is that he awoke with pain in the area of the neck and shoulder. It appears to us that, since the accident, his inability to sleep has been caused, at least on many occasions, by the injuries received in the accident. We are also satisfied his other physical problems were of short duration, unrelated to the accident, and of a minor nature.
Our law is to the effect that the testimony of a specialist is entitled to greater weight than that of a physician not so qualified.[1] Here Dr. Phillips not only was the only specialist who testified, he also was a treating physician; and the fact that Dr. Cotlar did not find muscle spasm on January 26, 1971 is not conclusive since spasms are not necessarily constant but rather are likely to occur at various times. We are impressed with Dr. Phillips' conclusion that the effects of plaintiff's injury has persisted for two years and his prognosis that it might continue an additional eight months.
With regard to quantum for personal injuries, it is now established that each case must be decided largely on the facts and circumstances surrounding the particular injuries involved and that amounts of awards in similar cases are relevant for the exclusive purpose of determining whether the award is so excessive or so inadequate as to constitute an abuse of the "much discretion" vested in the trial court.[2]
With this in mind we have examined other cases involving similar injuries *192 and conclude the award should be increased to the sum of $5,000.[3]
For the reasons assigned, the judgment appealed from is amended so as to increase the amount of the award for pain and suffering from the sum of $1,500 to the sum of $5,000. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs of this appeal to be paid by the defendants-appellees.
Amended and affirmed.
NOTES
[1] Blue v. Kinney Co., La.App., 256 So.2d 145; Prier v. Massman Const. Co., La. App., 205 So.2d 109; Manning v. Herrin Transp. Co., La.App., 201 So.2d 314; Gernon v. Buchanan, La.App., 201 So.2d 208; Mann v. Broussard, La.App., 200 So.2d 768.
[2] Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Thibodeaux v. Travelers Indemnity Company, La.App., 215 So.2d 215.
[3] See Guy v. Egano, La.App., 236 So.2d 542; Ardoin v. Travelers Insurance Co., La.App., 229 So.2d 426; Collier v. Fireman's Fund Insurance Co., La.App., 225 So.2d 9; Arnold v. Patterson, La.App., 224 So.2d 820; Trahan v. Lewis, La. App., 223 So.2d 511; Carlisle v. Employers Mutuals of Wausau, La.App., 220 So. 2d 152; Haik v. New Orleans Public Service, Inc., La.App., 219 So.2d 591; Harney v. Kountz, La.App., 218 So.2d 913; Desroche v. Seybold, La.App., 209 So.2d 288; Manning v. Herrin Transportation Company, La.App., 201 So.2d 314.