286 So.2d 163 (1973)
Irby BOURQUE et ux., Plaintiffs-Appellees,
v.
Alley VALLOT et al., Defendants-Appellants.
No. 4361.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
*164 Voorhies & Labbe by D. Mark Bienvenu, Lafayette, for defendants-appellants.
Mouton, Roy, Carmouche & Hailey by Harmon F. Roy, Lafayette, for plaintiffs-appellees.
Before FRUGÉ, SAVOY and PONDER, JJ.
PONDER, Judge.
This suit was instituted by Mr. and Mrs. Irby Bourque to recover damages sustained in an automobile collision. Defendants are Alley Vallot and his insurer, The Government Employees Insurance Company. The trial judge rendered judgment in favor of the plaintiffs, and defendants perfected a suspensive appeal to this court.
Since the defendants have stipulated as to their liability for the accident, and the parties have also agreed on the amount of medical expenses and property damage, the sole issue before this court is the extent of the injuries suffered by Mrs. Bourque.
On July 8, 1971, Mrs. Irby Bourque, age 33, was injured when the vehicle which she was driving was struck from the rear while stopped at a traffic light. The rear ending vehicle was driven by the minor daughter of defendant, Alley Vallot.
Immediately after the accident Mrs. Bourque consulted her family physician, Dr. Joseph W. Burley. Dr. Burley stated that she complained of being nervous and shaken up, but she was not suffering from any pain at the time. An examination revealed that while there were some fine tremors of the upper extremities, there were no tender areas in the neck or back, and motion of the extremities and neck was satisfactory. Plaintiff returned to Dr. Burley on July 13, and on July 15, complaining of pain in her neck and lower back, with accompanying headaches and nausea. Although x-rays were negative, he did note moderate muscle spasms in the paraspinous muscle in the lumbosacral region. He diagnosed her problem as a strain type condition in the lumbosacral and cervical regions and gave her corticosteroids and analgesics for pain and a mild psychic stimulant for depression. After these initial visits, Dr. Burley saw the plaintiff at intervals ranging from once every two weeks to twice a week until January 17, 1973. During this time she continued to receive medication and was prescribed and received physical therapy treatment. At the time of plaintiff's last visit, Dr. Burley felt that she was not fully cured. Although plaintiff's muscle spasms had stopped during December of 1972, and her neck complaints had subsided by the last visit, he predicted that her condition would still be a problem whenever she attempted heavy work, and stated that there was a possibility it would last indefinitely.
Dr. Curtis A. Prejean saw plaintiff twelve times between October 14, 1971, and February 2, 1972. He testified that her initial complaints were of headaches, nausea and pain in her neck, back and extremities. Dr. Prejean gave plaintiff medication and recommended physical therapy. During this period of treatment plaintiff's condition fluctuated between better and worse, *165 and on her last visit Dr. Prejean felt it was about the same as when he first saw her. He, like Dr. Burley, diagnosed her problem as a cervical and lumbosacral strain.
Dr. John J. McCutchen, a specialist in neurology, saw the plaintiff on three occassions, and noted some neurological deficits. He particularly noted reflex assymmetry, which is entirely objective, indicating some degree of nerve root damage. He also found that plaintiff had a positive straight leg raising test which shows irritation of nerve roots. Dr. McCutchen diagnosed plaintiff's injury as a cervical and lumbosacral strain. As of his last examination on February 15, 1973, he felt the cervical strain had resolved greatly, but that there was some residual. He was of the opinion that the lumbosacral condition was chronic and would probably be permanent.
The report of Dr. John Jackson, who performed a neurological examination of the plaintiff, was admitted in lieu of his testimony. He examined her on August 4, 1971, but was unable to find any objective symptoms to substantiate her subjective complaints of pain. Consequently, after reviewing her symptoms and history, he diagnosed her condition as a mild muscular strain and ligament stretch which he felt would be cured through physical therapy.
Defendants offered the testimony of Dr. Fred Webre, an orthopaedic surgeon, and Dr. Richard Levy, a neurosurgeon.
Dr. Webre examined the plaintiff once on September 9, 1971, about two months after the accident. Although her complaints were the same as those previously stated, he was unable to find any objective symptoms in his neurological examination. He stated that if her injury was severe enough to be chronically disabling, he should have found something objective. In addition, he felt that while plaintiff could have been suffering from a straining injury without objective manifestation, such should have healed. Finally, he admitted that plaintiff's complaints of pain were compatible with a straining injury, and that he had no reason to doubt her complaints.
Dr. Levy also examined plaintiff once, that being on November 29, 1972. Her complaints were of pain in the low back and neck, the latter when she turned her head to the extreme left or right. Since the neurological examination proved normal in all respects, he felt plaintiff had no neurological disability and he was unable to make a diagnosis. However, despite the absence of objective findings, he did not feel her complaints were feigned or exaggerated, and stated that they were compatible with a ligamentous injury.
Plaintiff, Mrs. Bourque, testified that she had pulled a muscle in her back several years earlier while picking up something, and had hurt her neck in an automobile accident in December, 1969. However, neither of these injuries had bothered her for about seven months prior to the July 8, 1971, accident. Prior to this latter accident, however, she did suffer from headaches and associated nausea.
Prior to the July 8, 1971, accident plaintiff was an extremely active woman. Her recreational activities included such things as bowling, skating, bicycle riding and fishing. In addition plaintiff performed many duties around her country home such as feeding and caring for her calves and milk cows, feeding chickens and general yard work. She was also responsible for all general household duties.
Within a period of about two or three days after the accident, plaintiff's neck and back began hurting her to such an extent that for the most part she was confined to her bed. Her headaches and nausea also increased, adding to her discomfort. As a result, she became unable to perform any of her previously mentioned activities. She first relied on her daughter for all the help she needed, but when school commenced at the end of the summer, plaintiff had to hire Mrs. Weda Bourque for such things as cooking, cleaning and driving her to the doctor. During this time she experienced *166 a great deal of pain, and in fact, she testified that up until the time she began seeing Dr. Prejean she was unable to get a full night's sleep. Her condition remained largely the same until the end of 1971, at which time her neck problem had improved somewhat. Plaintiff's difficulties with her back improved gradually during 1972, and at the time of trial in early 1973, the pain in her neck was occurring only once every two or three weeks, and her back was bothering her about three times a week.
Plaintiff's testimony was corroborated by that of her husband and co-plaintiff, Irby Bourque, and by her daughter, Ann Bourque. Furthermore, it was stipulated that if Mrs. Weda Bourque and Mrs. Lorena Dickinson, plaintiff's sister, were called to testify, their testimony would also corroborate plaintiff's claims.
Defendant contends that the trial judge's award of $10,000.00 to Mrs. Bourque for pain and suffering was grossly excessive, that plaintiff's injury lasted at most for six or seven months, and it is suggested that an award of four or five thousand dollars would be sufficient. We disagree.
Of the six physicians who examined the plaintiff, three felt that her condition should have cleared up quickly, and three felt that it could last indefinitely. However, the first three examined the plaintiff only one time each, while the latter three, Drs. Burley, Prejean and McCutchen, saw her many times and were in fact the treating physicians. Accordingly we will give more weight to their testimony. Lockhart v. Pargas, Inc., 271 So.2d 664 (La.App. 1 Cir. 1972); Johnson v. R. P. Farnsworth and Company, Inc., 186 So. 2d 405 (La.App. 1 Cir. 1966). Dr. Burley felt plaintiff would be bothered whenever she attempted heavy work. Similarly, Dr. Prejean felt the condition would last indefinitely. Finally, Dr. McCutchen labeled plaintiff a back cripple unable to do any lifting, straining or twisting.
Our ability to adjust damages on the appellate level is limited by the well settled rule that the amount of damages can only be disturbed when there has been a clear abuse of the broad discretion vested in the lower court. LSA-C.C. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Wright v. Highlands Insurance Co., 275 So.2d 829 (La.App. 4 Cir. 1973); Breaux v. State Farm Insurance Company, 267 So.2d 230 (La.App. 3 Cir. 1972). We note further that the peculiar circumstances surrounding each case are to be the determining factors, and the classification of the type of injury involved as "mild," "moderate," or "severe" is of little significance. Lomenick v. Schoeffler, supra; Odom v. Sanders, 277 So.2d 188 (La.App. 4 Cir. 1973). Considering the circumstances surrounding this case, especially the indefinite duration of plaintiff's condition, we feel that the trial judge's award was clearly not an abuse of his discretion.
For the reasons assigned, the judgment of the lower court is affirmed. Appellant is to pay all costs.
Affirmed.